BENNINGTON,
*February,*
1841

Bank of Man-
chester
*v.*
Slason.

---

## BANK OF MANCHESTER *v.* FRANCIS SLASON.

A note, or bill, indorsed to the cashier of a bank, may be sued in the name of the bank, if the bank alone is interested in the transaction.

A notarial seal, impressed upon paper is not on that account invalid.

Notice of dishonor of a bill or note to the indorser, if addressed to the town post office in the town where he resides, is sufficient, notwithstanding there may be another post office in town, nearer the residence of such indorser, and at which he does his principal business.

ASSUMPSIT, against the defendant as indorser of a bill of exchange, for two thousand five hundred dollars, drawn by Doane & Potter, upon Comstock & Martin, dated August

14, 1839, payable to the order of the defendant, at the Farmers' bank in Troy, New York, and by the defendant indorsed to the plaintiffs.

Plea, non assumpsit, and trial by jury.

On the trial in the county court, the plaintiffs offered in evidence the bill of exchange declared upon, the execution of which was admitted by the defendant, to which the defendant objected, because it was not indorsed to the plaintiffs, it appearing to have been indorsed in blank, and filled up thus : " pay to M. Clark, Esq. Cashier." It also appeared in evidence that Mr. Clark was then cashier of the Bank of Manchester, *and this was the uniform mode of* indorsing paper to banks. This objection was overruled by the court and the evidence admitted. The plaintiff then offered Nathan Doane, as a witness, who testified that Doane & Potter had, in the hands of the defendant, funds sufficient to pay said bill of exchange ; but, on cross examination he said that the defendant was selling flour on commission for said Doane & Potter and that the said Doane & Potter had unsettled accounts with the defendant to the amount of fifteen thousand dollars, and that no funds had been placed in the hands of the defendant particularly for the purpose of paying the aforesaid bill of exchange, although the witness believed that defendant had, at the time of indorsing the bill and hitherto, more than sufficient to indemnify him against this bill. The plaintiff then offered in evidence a paper, purporting to be a protest, made by Philander Wells, notary public, to which the defendant objected, because said paper had not attached to it a seal of wax or wafer, which objection was overruled by the court, and the paper admitted to be read in evidence as a protest duly authenticated. The plaintiffs then offered in evidence the deposition of William A. Farrand, who testified that he was a clerk in the Farmer's Bank of Troy, and that the acceptance of Comstock & Martin was presented on the 21st day of October, 1839, at the request of the Troy City Bank, at the Farmers' Bank in the city of Troy aforesaid, and payment demanded of the cashier of said Bank and was refused for want of funds of the acceptors. Thereupon P. Wells, Esq., notary public, duly protested the same, and notices of protest on the afternoon of said day were put into the post office at Troy aforesaid, directed to the

BENNINGTON, drawers and indorser, and that the notice to the defendant
February, was directed to him at Rutland, Vermont, and that said no-
1841.

Bank of Man- tices were put into the post office at Troy aforesaid by this
chester deponent; which deposition was objected to, but the court
v. overruled the objection and admitted the deposition.
Slason.

The defendant then offered testimony tending to prove, that there were now, and had been for more than twenty years, two post offices in the town of Rutland, one designated and known as the Rutland post office, and the other as the West Rutland post office; that the defendant resides in West Rutland and has for more than twenty years resided there, and there is his place of doing business and where he receives his letters; that in the year 1839, the post office at West Rutland was kept in the store of the defendant, and that on the eighth day of October, 1839, Philander Wells, the Notary Public aforesaid, had forwarded, by mail, written notices of protest, on other paper than that in suit, directed to the defendant at West Rutland, Vt. The defendant also offered evidence tending to prove that a letter directed to Rutland, and sent by mail, would go to the Rutland post office, and that the letter which William A. Farrand testified was mailed by him at Troy, directed to Francis Slason, Rutland, Vt., containing notice of protest, was received at the Rutland post office, and there remained for the space of twenty days, and until the clerk in said office remailed said letter, and directed the same to West Rutland. To the admission of this testimony the plaintiffs objected, and the court rejected the testimony.

The jury returned a verdict for the plaintiffs, and the defendant excepted to the decisions of the county court.

*J. S. Robinson*, for defendant.

1. There is a variance between the contract declared upon and the one given in evidence, in this, that it was between other parties than the parties to this suit. The plaintiffs declared as the indorsees of a bill of exchange, and on the trial gave in evidence a bill, indorsed to M. Clark, Esq., cashier. For this variance, the plaintiffs should have been nonsuited. *Gordon* v. *Austin*, 4 T. R. 611.

By the indorsement, the legal interest in the bill vested in M. Clark, and he alone could sue thereon, even if it had

been proved that M. Clark was a trustee to receive the money for the use of the plaintiff. 11 Johns. Rep. 52. *Fairfield* v. *Adams*, 16 Pick. 381. The possession of the bill by the plaintiffs was not evidence that it was their property, so long as it was assigned to another. *Welch* v. *Lindo*, 7 Cranch, 159.

2. The protest was inadmissible in evidence for want of a seal. The word *seal*, has acquired a technical meaning by judicial decision, and whenever a seal is required to be affixed to an instrument, either by the statute or the common law, it is understood to mean an impression upon wax, wafer, or other adhesive substance. 4 Vt. R. 471. 5 Johns. R. 237.

3. Is the testimony of Doane sufficient, in point of law, to dispense with the proof of notice to the indorser of the dishonor of the bill?

The indorser waives his right to require proof of demand and notice, only where he takes security to indemnify him against a particular indorsment. *Prentiss* v. *Danielson*, 5 Conn. 175. 1 Esp. 302. Or where, before the *bill becomes due*, the drawer assigns all his property to the indorser. *Bond* v. *Farnham*, 5 Mass. 176.

An assignment, made after the indorser has been discharged, does not renew his liability. *Tower* v. *Durell*, 9 Mass. 332.

The court erred in rejecting the testimony offered by the defendant. The obligation of the indorser is conditioned that the holder will present the bill, at maturity, to the acceptor for payment, and in case of non payment, to give notice to the indorser, when he resides in a different place, by the post next succeeding the last day of grace.

The notice must be directed to the post office nearest the residence of the indorser. *Ireland* v. *Kip*, 11 Johns. 232.

And where there are two post offices in the same town, the letter containing the notice must be sent to the post office most convenient to the party, or where he usually resorts for his letters. 16 Johns. 218. *Cuyler* v. *Nellis*, 4 Wend. 399. In the present case, the letter was improperly directed, and the notice is insufficient. *Bank of Utica* v. *De Mott*, 13 Johns. 432.

BENNINGTON,
February,
1841.

Bank of Man-
chester
v.
Slason.

*Sargeant & Miner,* for plaintiffs.

The objection to reading the bill in evidence, because it was not between the same parties, is not well founded. The word cashier, is a term known, and applied exclusively to banking corporations, hence the universal practice of indorsing to him in that capacity, has prevailed, when the paper is indorsed for the benefit of the bank. To hold that M. Clark is the party, would at once deviate from the intent of the contracting parties, and, in so doing, the court would " drop the substance and catch at the shadow."

The custom of the bank is binding on those who contract with it. 10 Mass. R. 288. 12 do. 6.

The holder may fill a blank indorsment, or alter it at pleasure. 10 Mass. R. 288.

It would be absurd to drive the plaintiff to a new trial, only to make such alterations as his case might require in the indorsment, and which could in no wise benefit the defendant. A contract with a known agent is a contract with the principal. *Arlington* v. *Hinds,* 1 D. Chip. 431.

On the question of notice, we insist that when the defendant holds indemnities, to secure him from loss or damage, as in the present case, he is not entitled to notice of non payment. 5 Mass. R. 170. 9 Mass. R. 332.

But notice was given, with all the diligence which the circumstances of the case would admit.

The case shows the reputed residence of the indorser to be in Rutland. He indorsed the bill payable in a foreign government, without designating any other place to which notice of non-payment should be forwarded.

Among the variety of exceptions to the rule requiring notice to be sent to the nearest post office, we find many not so strong as this ; for instance, it is no want of diligence to suspend a notice until a notary can obtain information as to residence, and that by writing to a foreign country. 6 Peters, 172.

It would be requiring more than due diligence, to compel the holder, or the protesting officer, to ascertain, at his own peril, the exact distance between two post offices in a foreign government, and the nearest to which the indorser resided.

The law does not require excessive diligence. *Reasonable*

diligence is sufficient.   3 Kent's Com. 106.   6 Peters' R.
172.   1 *id.* 578.

In the state of New-York, the supposed inflexible rule has
been relaxed by the legislature, and nothing further is now
required than was done in this case.   3 Kent's Com. 108.
2 do. 458.   Statute of New-York, 1835, p. 152.

Whatever the common law may be, the above statute
must be conclusive in this case.   The bill was drawn in the
state of New-York, payable in that state, and the *lex loci*
must govern. 3 Kent's Com. 458.   Comyn on Cont. 407, 8.

As to the question of sealing the protest, we have only to
say, that, however agreeable it may be to the black letter
lawyer to trace the history and use of public and private
seals, in their progress through the different ages in which
the common law has been maturing to its present condition, it
is sufficient for the present purpose to show that this instru-
ment was sealed in conformity to well settled principles.   6
Jacob's L. Dic. 36, 37.   2 Coke's Inst. 234.   4 Kent's
Com. 452–3.   4 Vt. R. 471.

The opinion of the court was delivered by

REDFIELD J.—The indorsement being to the cashier of
the bank, the suit in the name of the bank is well enough,
it being admitted the transaction was one in which the bank
alone were interested.   *Farmers and Mechanics Bank* v.
*Day,* ante, 36.

The objection that the seal of the notary was not impress-
ed upon wax or wafer, is one which cannot avail.   It has too
long been settled that public seals do not require wafer or
wax, to their validity, to be now brought in question.   It is
now the more common and more convenient mode to impress
such seals upon the paper itself.   Our revised statutes ex-
pressly provide that such impression, in the case of public
seals, shall be good.

The testimony given on the part of the plaintiffs, to excuse
notice to the defendant, it is not necessary to consider here,
as the case did not turn upon that, but upon the sufficiency
of the notice given.   It is questionable whether any indem-
nity in the hands of the indorser, unless it were expressly
given with a view to meet that very liability, would excuse
the holder from giving notice.

Bank of Manchester
*v.*
Slason.

But the court think the notice, given in the present case, was sufficient. The most that is expected in establishing a rule in similar cases to the present, is to fix some rational medium, by which to secure proper diligence on the one part, and reasonable security on the other. We ought not to require the greatest possible degree of vigilance from one party, and nothing from the other. This would be unreasonable and unjust. We require of the holder to use reasonable diligence in finding out the place of residence of the several parties entitled to notice of dishonor, and this is all we can require. It is always an easy matter to find out the town. In those states where townships exist, and are the medium of transacting the municipal business, a letter addressed by that name will go to the town post office. Every man within the limits of the town, although he may do most of his ordinary business at some village post office, does know, and is bound to know, that he will sometimes receive letters through the town post office, and it is no hardship, in a case like the present, to require him to look there, as he must know the time his bills fall due.

On the contrary, if we require the holder of a bill or note, in giving notice of dishonor, to find out, in all cases, the nearest post office, or that at which the party does his business, it will render the post office, under its present organization, a very unsafe reliance in such cases. It is an easy matter to find in what town a business man resides, but at what particular post office he does his business, is a matter which very few persons, out of the village of his residence, except his particular correspondents, would know any thing of. Men might be so situated, in many towns in this state, that half the inhabitants of those very towns, could not tell at what post office they usually received their letters. This would be the case with some in the town of Rutland. We should therefore be unwilling to adopt a rule, upon this subject, so unreasonably strict as was done in the state of New York, *Cuyler* v. *Nellis*, 4 Wendell, 398, and which might require the interference of the legislature here, as it did in that state. We think the cases cited from the U. S. Sup. Court R. 1 Peters, 578, and 2 Id. 543, much more in accordance with sound and rational principle.

Judgment affirmed.