## Patrick *v.* Beazley.

Where the indorser of a promissory note lived a mile and a half from town, but kept a public office in town, where he was to be found during a portion of the year, and generally kept a clerk, and the post office in town was the one at which he was in the habit of receiving his letters and papers, it was held that notice of protest deposited in the post office of the town was not sufficient to charge him as indorser.

IN ERROR from the circuit court of the county of Hinds.

This is an action which was instituted against the plaintiff in error as the indorser of a promissory note. Upon the trial, the plaintiff in the court below introduced as a witness the notary who protested the note for non-payment, who proved that on the day the demand and protest were made, he deposited a written notice thereof in the post office in the city of Jackson, where the demand and protest were made, directed to the indorser at that place, the note being payable at the Planters' Bank in Jackson. That the plaintiff in error did not reside in the town, but about one mile and a half from it. That this was Patrick's regular post office. He also proved that he was at that time clerk of the court of appeals, and kept his office in Jackson, at which he was regularly in attendance during the sessions of the court, and occasionally in vacation; but that he generally had a clerk in the office. He did not give him personal notice, nor use any other means of communicating a knowledge of the dishonor of the note.

Upon these facts the court was asked to instruct the jury that Patrick was entitled to personal notice, or if they should find that he had a known place of business in town, that the notice should have been left there or at his dwelling, and that a notice deposited in or left at the post office was not sufficient. But the court refused these instructions, and decided that the notice was sufficient. An exception was tendered to the opinion, and the plaintiff now assigns as ground of error the matter of this exception.

VOL. VI.—52

Patrick *v.* Beazley.

W. Yerger, for plaintiff in error.

The charge was clearly erroneous. The rule of law is well settled, that where a party lives in the town where the note is payable, or where his nearest post office is in that town, notice must be either given to him in person, or it must be left at his dwelling house or place of business. Notice through the post office is never sufficient, unless there is an actual sending or transmission by means of the mail from one place to another. The following cases clearly establish this principle: Wilcox and Fearn *v.* McNutt, 2 How. 776; Martin & Yerger, 183; 1 Yerg. 166; Bayley on Bills, last Am. ed. 277; 10 Johns. 490; 11 Johns. 231; 20 Johns. 372; 1 Conn. 329; 17 Martin, 137; 3 Conn. 496; 2 Peters, 101; Benjn. and Slidell's Digest, 107, and cases cited; Chitty on Bills, 506, in notes, last ed.; 1 Lit. 489; 3 Lit. 499; 5 N. S. Mar. 139; 5 Ib. 158; 6 Ib. 508; 5 Ib. 360; 7 Ib. 492. The above cases establish the above position very clearly.

The indorsement was made jointly by Patrick and Coffee, who were not partners. Notice alone was given to Patrick. This was not sufficient. Notice must be given to all the joint indorsers of a promissory note, to charge either. Bayley on Bills, 285, last Am. ed.; 1 Conn. 368; 4 Cowen, 126; 3 How. 192.

Work, for defendant in error.

This is an action of assumpsit against Patrick as indorser of a promissory note, and the question is, was notice left at the post office at Jackson sufficient, the note being payable at a bank in Jackson, and dated at Jackson, Patrick residing a mile and a half from Jackson, and occasionally being in town at the clerk's office of the court of which he was clerk.

It is contended by the counsel for Patrick that this is not sufficient diligence to charge him. If Patrick *resided in Jackson and had there a place of business*, it would be conceded that to charge him, personal notice should have been given him, or it should have been left at his residence or place of business. This and no more is settled by the decisions of Wilcox and Fearn *v.* McNutt, and the case of Ireland and Kip, in 10 and 11 Johns. Reports, cited by the counsel for Patrick. But it is insisted that Patrick resided out of the town, and had *no*

Patrick *v.* Beazley.

*place of business* therein, in the sense of the law merchant, and therefore notice left at the post office was sufficient. Cases from Tennessee are cited by the counsel for Patrick, in Martin and Yerger, 183, and in 1 Yerger, 166, where it has been held that if an indorser lives out of town, in the same county, notice must be personal, or being left at the post office (the nearest) is not sufficient, but a special messenger should be employed. The only authority to support this position cited by the Tennessee court is the Kentucky case of the Bank of Logan *v.* Butler, 3 Litt. Rep. as to the Kentucky case, no authority is cited to support it, no good reason seems to be given for it. That is not a commercial court or country, and on such a subject is not entitled to much weight. It will be seen from the petition for a re-argument in that case by Gen. Hardin, (a gentleman of great learning in the law) that the Circuit Court of the United States at the same place (Frankfort) had, just before the date of that decision, which was in 1823, decided differently. This decision is relied on in 1827, in Tennessee, in the case in Martin & Yerger, as authority for the decision then given; and again, in 1829, in the case in 1 Yerger, the case in Martin & Yerger is the authority for the decision in Yerger.

In the case of Stamps *v.* Brown, decided at December term, 1832, by the supreme court of this state, it was held, that notice left at the post office at Woodville for the indorser, who lived in the vicinity, was sufficient; and in that case the court will perceive that the Kentucky case was cited in the brief of Mr. Henderson, and it is virtually overruled by the court. Walker's Rep. 527 to 530. The cases of Ireland & Kip were before the court, as they have been before all the courts that have examined this subject, and they are only held to decide what is not disputed, that when the parties live in the same place, or the indorser has a place of business therein, the notice in the post office will not do. In the case of the Bank of Columbia *v.* Lawrence, decided at January term, 1828, 1 Peters, 578, it is decided, that notice left in the post office at Georgetown, when the party to be charged "resided in Alexandria county, in the District of Columbia, and about two or three miles from Georgetown," was sufficient. In this case the defendant had what might more properly be called a

place of business in Washington city than the defendant here had in Jackson, yet the court decide that notice at the post office at Georgetown was sufficient.

In this case the court expressly overrule the idea or reason that influenced the decision in the case of Martin & Yerger, to wit: that the party was bound to send a special messenger. In such case the payee *"may"* send a special messenger, but is not bound to do so. The passage in Chitty on Bills, cited in Martin & Yerger, and the case of Pearson *v.* Crallan, Smith's Reports, 404, which seem to be the basis of the decision by Judge Peck, are examined by Judge ·Thompson, of the Supreme Court of the United States, and the meaning and effect given them in Tennessee is denied. See the latter part of the opinion. This also overthrows the Kentucky decision. In Williams *v.* The Bank of the United States, 2 Peters, at page 104, the cases of Ireland & Kip, 10 and 11 Johns. Rep. are examined, and the same construction is given them as in Walker's Reports, before cited, to wit: that they decide (what no person denies) that if parties live in the same town, or have a place of business therein, the notice must be personal, or at the dwelling house or place of business.

In the case before the court, Patrick lived in the· country, and had no *place of business in Jackson.* The place of business of Lawrence in Washington city, adverted to in 1 Peters, 581, was certainly much more a place of business than the temporary calls of the defendant in this case at his office in town, yet the court decide it was no place of business, and that notice in the post office at Georgetown was sufficient. This decision of the· Supreme Court of the United States was *after* the decision in Kentucky, and the first decision in Tennessee, the Kentucky decision being in 1823, the Tennessee in 1827, and the ·supreme court in 1828. In the Bank of the United States *v.* Carneal, 2 Peters, 550, notice was left in the post office in Cincinnati, directed to the defendant, " Campbell county, Ky.," he residing in said county, two miles from Cincinnati. There were post offices at Newport, three miles from Carneal's residence, and at Covington, two miles distant from his residence, in said county, in Kentucky. He frequently visited Cincinnati, and did much business there. The court say, at page 553, of the notice, it was good " if left at

Patrick *v.* Beazley.

the post office at Cincinnati." Here the party lived two miles off, the Ohio river, one mile wide, intervening, and the defendant lived in another state, yet the notice *left* in the post office in Cincinnati would be good. This case, and the case in 1 Peters, counteracts the idea of the counsel and the judge in the case in Martin & Yerger, 183, before cited, that notice at a post office is only good when to be *"sent"* by mail from that place, and is not good when "deposited" not to be sent, and is wholly overruled in the two cases in Peters, aforesaid, and in the case in Walker's Rep. The idea is familiar to the court that as few clogs as possible, consistent with law, will be laid on the circulation of commercial paper, and it would certainly be a considerable clog if the courts should hold in this very commercial country, that notice (when a party lives in the country, one or twenty miles from a post office) should be sent by a special messenger.

The case of the Hartford Bank *v.* Stedman, 3 Conn. Rep. 489, referred to by plaintiff in error, is relied on as an authority for Beazley in this case. In the Tennessee case from Yerger, the decision turned upon the fact that it did not appear that the indorser was in the habit of receiving his letters at the post office at which it was left. Bayley on Bills, 278, in note. The citation of the plaintiff's counsel of Chitty and Bayley on Bills, only state the doctrine, that where parties live in the same place, &c. notice must be personal, and refer to the New York cases of Ireland and Kip already remarked on.

Can the office of the plaintiff in error (which is a *public office*, and not where he transacted his *private* business) be considered, in the meaning of the law merchant, his place of business?

In the case of the Bank U. S. *v.* Corcoran, 2 Peters, at page 129, second paragraph, Mr. Justice Washington, by putting the words *"private business"* in italics, intimates a distinction between a place of private and public business—Corcoran being a postmaster, and also a justice of the peace, in Georgetown, it being proved that he transacted his private and public business at the post office. The expression in the bill of exceptions, "but the court was of opinion that notice through the post office was sufficient, if defendant, Patrick, did not live in the town where the note was protested, even though he had an office or known place of business in

52*

said town." The true construction and meaning of the bill of exceptions is, that the court refused the instructions asked for, and the *opinion* of the court, as stated, was an *abstract* opinion, if it was right to refuse the instructions, though, for a wrong reason, the court below will be sustained. As well might the gentleman contend that if the court had rightfully refused the *instructions to the jury, that opinion* would have been vitiated by the court assigning as a reason that a party had committed murder. A right opinion is not to be vitiated because it is founded on a wrong reason. The opinion expressed must be taken in connection with the proof, and be intended to be applicable thereto; and the court being of opinion that the place of business alleged was not such a place of business as the law contemplates, gave the opinion that notice left at the post office was *not* sufficient, *though* the party had the supposed place of business in town mentioned in the proof. This is the true meaning and construction of the bill of exceptions.

I have read several of the decisions in Louisiana. Such as I have read are short, without any reason or authority given; and the Kentucky case, which is not founded on any authority, seems to be the principal authority for the Tennessee cases. The authority from Chitty on Bills, and Smith's Reports, in the case in Martin & Yerger, is differently explained and applied in Bank of Columbia *v.* Lawrence, 1 Peters, 578.

The community have certainly, now for nine years, been governed by the decision in Walker, and the consequences would now be very serious to reverse that decision. That decision, and those of the supreme court of the United States, must overbalance the decisions referred to.

The note in this case was made by the partners, King, Miller & Co. and indorsed separately by R. A. Patrick and Hiram Coffee. See the record first filed, 26th June, 1840. The statute of this state makes "every joint bond, covenant, bill, or *promissory note*" joint and several. See How. & Hutch. 578, sec. 9. This was a several note as well as a joint one, by the statute, of each partner, and the indorsement was a several indorsement, and not within the rule relied on by the counsel for Patrick. The case in 4 Cow. 126, referred to by the counsel, (independent of our statute,) does not decide the point.

Patrick *v.* Beazley.

At the 7th page of the record filed in June, 1840, which is marked on the left hand side, the court will see that the note was indorsed thus: "R. A. Patrick, Hiram Coffee." And Patrick and Coffee agreed to receive notice at Jackson, which note the bill of exceptions shows was read to the jury in evidence; and their agreement to receive notice at "Jackson" ends the controversy. The indorsements are several, both at common law and by our statute, and therefore notice to the one the plaintiff wishes to charge is sufficient.

If this question had been made in the court below, we could have shown that Coffee had notice, or was dead at the time. See the opinion of the court in the case of the Bank of Chenango *v.* Root, 4 Cow. at page 129, where the court intimate that this objection should have been made by motion in arrest of judgment, in the court below; and, not being made there, he must be considered as waiving the objection. This being a several note, as to the makers, King, Miller & Co., the indorsements of the same note being an *incident thereto*, must follow the rule of the principal. The case in 3 How. 193, was a case of *title* and *legal interest* in the instrument sued on, and not a question of notice, our statute making the note several, and indorsement, by consequence, also several; the notice to one is sufficient to make him responsible.

Mr. Justice TROTTER delivered the opinion of the court.

We take it to be a well settled and universal rule, that, where the indorser resides in the same town *or place* with the holder of a dishonored note or bill, notice of protest must be personal, if, on diligent inquiry, the indorser is to be found; or, if he is absent, it may be left at his dwelling or place of business; and that, in such case, notice left at the post office is not sufficient; that when the party, entitled to notice, resides in a different place, notice may be *then sent* through the post office to the post town or office which may be nearest his residence. This is recognized to be the doctrine in regard to notice, in all the books. The only exception which appears to have been at any time allowed, is the use of the convenience of the penny post in large cities, when the indorser lives in a part of the city remote from that of the holder, or in its

neighborhood. It was sanctioned by the court of King's Bench in England, in the case of Scott and others *v.* Lifford, 1 Camp. 249. In that case the court say, that if the indorser resided either in the city of London or its near neighborhood, notice by this mode might be sufficient. But the court in New York refused to allow a transmission by the letter carrier in the city of New York to be, sufficient; and when the indorser resided more than three miles from the City Hall, held that he was entitled to personal notice, although it was proved that he had given instructions to the letter carrier to leave all letters directed to him at the post office at a particular house in Frankfort street, at which he called or sent every day for letters. The notice was put in the post office, and under this proof it was insisted that it was sufficient. But the court held otherwise. Ireland *v.* Kip, 11 J. R. 231.

The courts have manifested a constant jealousy of admitting relaxations of the rule which requires personal service of notice, and have never permitted it, except in cases of strong necessity for the convenience and benefit of commerce. But this necessity, under which transmissions by mail are allowed, can never be said to exist when the parties reside in the same town or place, and therefore, when that is the case, the courts will not dispense with personal notice. But it is urged that this principle does not apply where the indorser resides beyond the limits of the town, when notice through the post office is sufficient, if it be the post office nearest his residence. This argument assumes a distinction which is not taken in the case which has just been noticed, of Scott and others *v.* Lifford, when the allowance of the use of the penny post was not made to depend upon the question whether the indorser resided in the city of London or its near neighborhood. And the effect of that decision is manifestly at war with any such discrimination; for it puts the residence in the near *neighborhood* of the city upon the same ground with a residence *in* the city. To permit this distinction would necessarily expose parties entitled to notice to an uncertain and very often to a capricious and arbitrary rule, extremely embarrassing to the courts in making an application of it, and therefore injurious to commercial pursuits. It is often very difficult to determine the precise limits of towns, when they have not been incorporated; and, in that case, different opin-

ions may exist as to where they cease and the country begins. In cases of cities or incorporated towns a surer criterion is fixed by the boundary line, and yet a moment's reflection must satisfy all that the rule would not be the less exposed to embarrassment, if not to ridicule; for it may so happen, and in large commercial towns such will no doubt often be the case, that a party living within the admitted environs of the place, may yet be beyond the actual boundary line of the corporation, and so lose a privilege to which he would be otherwise clearly entitled. And, as was very properly said by the counsel for the defendant, it may turn out that two persons may be subject to a different law, who yet reside within twenty steps of each other, the one within and the other beyond the line.

And again: one who resides two miles from the holder may claim personal notice, whilst another, living perhaps within fifty yards of him, must take the chances of the post office. Such a discrimination appears to us to be without reason or foundation. The obvious meaning of the courts when they require personal notice, if the indorser lives in the same town or place, is, the same immediate neighborhood, whether it be in town or the country. It was evidently so understood by the judges in New York, in Kip's case, and has been so considered by the supreme court in Tennessee, in two cases exactly like the one at bar. Mart. & Yer. 183; 1 Yer. 166.

The court of appeals in Kentucky have sustained the same views. In the case of the Bank *v.* Butler, 3 Lit. 500, it appeared that the indorser lived four or five miles from the town of Russelville, where the holder of the note resided, and that the notice was directed to him at that town, and put in that post office. They held this to be insufficient, although it was the post office nearest to his residence. They say the law allows a transmission by mail only in cases when the indorser resides in another place, between which and the post office where the notice is *mailed* there is a regular post road.

The supreme court of Louisiana have, in repeated and numerous cases, settled the question in the same way. In Clay *v.* Oakley, 5 Martin, N. S. 139, the notice was left in the post office at Alexandria, directed to the indorser at that place; and the court

held it to be insufficient, saying, it made no difference whether he resided in or out of the town. In the case of the Bank *v.* Rowell, 6 ibid. 508, the indorser lived three miles from the town of Baton Rouge, at which post office the notice was deposited, and it was determined not to be sufficient, although it was proven that she was in the habit of sending a servant regularly to that office for letters, and that they seldom remained in the office longer than forty-eight hours. The same was ruled in the case in 7 Martin, 492.

It is thus shown that in three of the states this precise question has been settled by repeated adjudications, and that in the state of New York the principle established by her courts is in exact harmony with that of the others. Against this weight of precedent, the case of the Bank of Columbia *v.* Lawrence, 1 Pet. S. C. Rep. 584, has been produced, and its authority relied on. It must be admitted that the court has there decided the question differently; a result to be attributed, as we conceive, to a misapplication of the rule which permits *transmissions* of notice through *the mails*. It is remarkable that the opinion of the court recognizes the identical principles throughout which are laid down by the judges in the cases just noticed in Louisiana, Kentucky and Tennessee; and so fully does the judge who delivered it concur with the New York courts, that he refers to one of the cases decided by them for the authority upon which he relies. It must have been with the view to fortify the general rule, stated by the judge, that he refers to the case of Reid *v.* Payne, 16 J. R. 218, and not to sanction its application to the case before him, for there it is an authority against him. In that case the note was payable at Albany, and was there protested for non-payment; and notice was placed in the post office *there* to be *mailed* for *Greenbush*, a post office at another place. The only question for the court was, whether notice sent to Greenbush was sufficient, as it appeared from the proof that the indorser resided at Schodack, where there was also a post office. But, it being proved that he was in the habit of receiving his letters at Greenbush, the notice was held sufficient. "No cases," says the judge, in deciding the case of the Bank *v.* Lawrence, "have fallen under the notice of the court which have suggested any limits to the distance from the post office within which a party

Patrick *v.* Beazley.

must reside in order to make the service of the notice in this manner good. But cases have occurred where the distance was much greater than in the one now before the court, and the notice held sufficient." And he then refers to the case of Reid *v.* Payne, in New York. The facts in that case, however, were wholly different, and the defendant resided in a different town or place; and it was to that state of case that the court in New York applied the rule, that notice may be sent by the mail to the post office nearest to the residence of the indorser. And hence judge Thompson concludes, that, as Georgetown, where the notice was deposited, was nearest to the residence of the defendant, the notice was sufficient, though he resided within two or three miles of that place. The court must have been influenced by the circumstance that the general usage of the bank had been to give notice in that mode, which was known to the defendant; and we must conclude that, had the cases which had been decided in Kentucky, Louisiana and Tennessee fallen under his notice and attention, he must have come to a different conclusion.

The case of Stamps *v.* Brown, Walker's Reports, 526, appears to us to have been decided under a clear misapprehension of the doctrine in the case of Shed *v.* Britt, 1 Pick. Rep. 411. That is the case which is referred to by the judge who expressed the opinion of the court, to support his conclusions. Judge Nicholson remarks, that "though no good reason can be given why an indorser residing without the limits of the town or city should not be entitled to as strict notice as one residing in the town, yet for the sake of convenience a line must be drawn, beyond which, notice by *mail* is sufficient, and consequently concludes that a letter deposited in the post office nearest his residence is sufficient, and refers to the above case in Pick. The judge evidently alluded by this remark to the line of the corporation as being the criterion of the question. But the court in Massachusetts say, there cannot be one law for an indorser who may reside just over the line, and another for one who may live only a mile on this side. And they add, that whenever the indorser resides in a town in which there is a post office, different from that in which the note is dishonored, it is proper to send notice by the mail." The only question raised in this case was, whether notice in any case sent by mail is more than prima

Patrick *v.* Beazley.

facie evidence of notice. And the court held it to be conclusive. The notice was mailed, and directed to the defendant at Bridgewater, a post town entirely different from that in which the holder resided.. We feel constrained, therefore, to differ from the court in its conclusions in the case of Stamps *v.* Brown.

We do not deem it necessary to notice the other questions which are raised in the assignment of errors, as the judgment must be reversed for the error which has just been considered.

Judgment reversed, and a venire de novo awarded.

Mr. Justice TURNER dissenting.

I concur with the court in the reversal of the judgment of the court below in this case. The indorsement sued on was the joint indorsement of the plaintiff in error and one Hiram Coffee; and to entitle the holder of the note to recover against Patrick, I conceive it was equally necessary to show that Coffee had also been legally notified of the non-payment of the note at maturity. In support of this I refer to Bayley on Bills, 285, and Bank of Chenango *v.* Burt, 4 Cow. Rep. 126.

But I dissent entirely from the opinion of my brother judges upon the main question in this case, and upon which their decision is founded. The statement contained in the bill of exceptions, that "the drawers and indorsers will acknowledge notice at Jackson, Mississippi," would of itself authorize the notice to Patrick through the post office at that place. As it does not appear by the record that under this agreement the notice was to be personal or left at any particular place in Jackson, the jury had a right to conclude that the agreement intended the notice to be left at the post office there: it being the post office where Patrick was in the habit of receiving his letters and papers, and where he was in the constant habit of applying for them.

But independently of these views, I am decidedly of the opinion, that a notice to an indorser of the non-payment of a note or bill of exchange, deposited, after due demand of payment, on the same day or morning following in the post office nearest the indorser's residence, or where he is in the habit of getting his letters and papers, when he lives without the corporate limits of the city or town, is legal notice to charge him; although the note or bill may

be payable and protested in the same city or town. And, without going into critical review of the authorities which have been cited, I rest my opinion, mainly, upon the decision of the supreme court of this state in the year 1832, in the case of Brown against Stamps, reported in Walker's Reports, 526, the fact of its recognition by the bench and bar ever since, and the usage and rights which have become fixed under that decision. In that case this very question arose directly, and was fully discussed; and it was then solemnly decided by our highest judicial tribunal, that, where the indorser resides out of the corporate limits of the town where the note is payable or the maker resides, personal notice is not necessary, but notice through the post office is sufficient. The principle of that decision was fully acquiesced in at the time, and has never been agitated till the present occasion. The law was then definitively settled upon this subject; and the practice or usage of the whole community of merchants, bankers, planters, mechanics, lawyers, and of every one who had a bill or note to protest or indorser to notify, has been in conformity to that decision from that day to this. To say that this rule shall be *now* changed, and thereby release every indorser whose liability has been fixed according to the decision mentioned and the practice under it, would require reasons to satisfy my mind which I have not yet heard.

All our rules of law, in fixing the liabilities of parties to bills of exchange and promissory notes, have originated in commercial usage and been finally settled by judicial decisions. These rules are all established upon the ground that the observance of them is most likely to give to those interested notice of the dishonor of the paper, without too great an inconvenience to the holder. Undoubtedly, *personal* notice to the indorser would be the best; but this rule is relaxed so that when the parties reside in the same place, a notice left at his residence or at his place of business is deemed amply sufficient: when a notice left at the post office is just as likely to reach him as one left at his place of business, and at the same time it would be wholly defective when he resides in the same place. These rules, therefore, in regard to the protest of commercial paper, and the discharge or liability of the parties to it, are arbitrary, dependent upon usage and judicial decisions, as stated; and when once established by judicial decision, ought not,

in. my opinion, to be changed, so as to affect the past, and destroy rights and liabilities which have arisen under them.

Even a legislative enactment ought, I conceive, to act only prospectively in such cases. When the rights and liabilities of parties have been ascertained and fixed by the adoption of a rule acquiesced in by every one, and sanctioned by our supreme court, it becomes a part of the common law of the land, and the consequences resulting from a sudden change are just as serious as if it were founded in a positive law; and rights ought to be as sacredly regarded in the one case as in the other. The injuries and mischiefs too, which spring from such sudden changes, (changes resting wholly with the court as to the requisite diligence to be used by the holder of a note or bill,) are incalculable. No one, familiar with the business of this country, and the extent to which the credit system has been carried for the last few years, can doubt that by the decision of my brother judges in this case, indorsers whose liabilities were fixed by existing law will be discharged from those liabilities to an immense amount, indorsers who never dreamed of such discharges. Besides, the difficulty, not to say impracticability, of giving personal notice where the indorsers reside ten, fifteen or twenty miles from the place, and on a day when a great deal of paper may be protested, such as occurs on the 4th of January, every year, outweighs with me any conceivable advantages that might result from the adoption of the rule now established by the court.

I cannot, therefore, find any principle, upon which I can subscribe to this, to me, new doctrine; so inconvenient in practice, and so startling and alarming to the holders of paper, who have done every thing to charge the parties which the law as then known to them—as expounded by the supreme court of this state years ago—required them to do. The most eminent judges in England and America have always felt themselves constrained to bow to the supremacy of long established usage, and have considered themselves bound by former judicial decisions upon the same point. See the elaborate and very full opinion of the supreme court of the United States upon the subject of usage generally, in the case of Renner *v.* Bank of Columbia, 9 Wheat. Rep. 581. And this principle, too, for which I contend, is recognized

by courts in instances where the usage is in violation of some strict positive law. Such as the taking of interest in advance, and the use of Rowlett's Tables in computing interest, as decided by this court in the case of the Planters' Bank *v.* Snodgrass, 4 How. Rep. 573. And decided in like manner in most of the states of the Union.

Thus, Lord Kenyon, in delivering his opinion in the case of Brown *v.* Harradin, upon the subject of days of grace being allowable on promissory notes, adverting to the consequences that would result from a contrary doctrine, says: "In addition to these considerations, we are now told that it has been the constant practice at the bank and at the principal bankers, to make this allowance on promissory notes. Then if we were to make a decision in opposition to all this practice, it would be attended with the most serious consequences." For "if we were to determine that no such allowance (as the three days' grace) ought to be made, all those parties would be involved in the crime of usury; and again, all the holders of notes who made no demand on the makers till the expiration of the three days, and who afterwards resorted to the indorsers, will have been guilty of laches." And more expressive language than this may be found in 1 Dev. Rep. 100; 9 Wheat. Rep. 585.

And such is not only the language of judges, but it is the language of reason and experience in the common affairs of life, "that certain rules should be established to govern all cases in future. That pure patriot, and great statesman, and I may say eminent civilian, James Madison, in discussing the obligations we are under to recognize the judicial decisions of our predecessors, even on constitutional questions, uses the following language: "And why are judicial precedents, when formed on due discussion and consideration, and deliberately sanctioned by reviews and repetitions, regarded as of binding influence, or rather of authoritative force, in settling the meaning of a law? It must be answered, first, because it is a reasonable and established axiom that the good of society requires that the rules of conduct of its members should be certain and known, which would not be the case, if any judge, disregarding the decisions of his predecessors, should vary the rule of law according to his individual interpretation of it. *Misera*

*est servitus ubijus est aut vagum aut incognitum.* Second, because an exposition of the law, publicly made, and repeatedly confirmed by the constituted authority, carries with it by fair inference, the sanction of those who, having made the law through their legislative organ, appear under such circumstances to have determined its meaning through their judiciary organ."

How forcible, how applicable, or rather how much stronger is the present case in favor of the opinion, to which my mind is irresistibly brought? We are not now construing a clause in the constitution, nor fixing the meaning of a legislative enactment. We are simply determining the rule as to the degree of diligence necessary to be used by the holder of a note to charge an indorser in such a case as the present. The notice given to the indorser was in conformity to a usage so well established and so general in this state that, in my opinion, "courts of justice are bound to notice it *ex officio;* and, in the absence of any proof to the contrary, will presume that such was the understanding of all the parties to a note when they put their names upon it." 9 Wheat. 585. And this notice to Patrick, too, was in conformity to the decision in the supreme court in the case of Brown and Stamps, already cited; which decision settled the law of this case as permanently as this court or any other can ever settle it in this state. For we cannot expect our successors to be more regardful of our decisions than we are of those of our predecessors.

If I deemed it necessary, on this occasion, to go beyond the limits of this state for authorities to support my opinion, I would refer to the opinion of the supreme court of the United States, directly and clearly in point, in the case of the Bank of Columbia *v.* Lawrence, 1 Pet. Rep. 578. And I will barely add, in conclusion, that the general usage upon this question, the decision of our own supreme court, years since, sanctioned by the opinions of our judges and lawyers till the present time, with the consequences that must follow from a contrary decision, and the decision of the supreme court of the United States just referred to, have infinitely more weight with me, in such a case as the present, than any decisions that may have been made in Tennessee, Kentucky, Louisiana, or any other states of the Union.