Mr.. Justice Thompson
 

 delivered the opinion of the Court,—
 

 - This case conics before the Court upoti a writ of-error-to the Circuit Court of the District’of. Columbia,
 

 
 *581
 
 . o.Thfe defendant was sued as endorser of a promissory note for $50.00, made by Joseph Mulligan, bearing date the 15th of July 1819, and payable sixty days' after date, at the Bank of Columbia. The making and endorsing the note, and the demandof payment, were-duly proved.; and the only question upon- the trial was touching the manner'in which notice of non-payment Was given to the endorser; ho objection'being made to the sufficiency of the notice in -point of time. •
 

 . -The' material facts-before the Court upon this part of the case,- as shown by the bill of-exceptions were; ■ that the banking-house of the plaintiffs was in Georgetown, at which place the note appears ,to be-dated. That some time before the hote fell due, the defendant had lived' in .the city of Washington, and carried on the business of á m&rocco leather dresser, keeping a shop'and’ living in a house of. his own, in the said city. That about the year 1818-, he sold his shop and,.stock- in trade and’ relinquished' his business, and removed with' his family to a farm, in Alexandria county, within the District of Columbia, and about two or three miles from Georgetown. ! That the Georgetown post-office, was the nearest .post-office to his place of, residence,.' and the one at which he usually received his letters.
 

 The notice of non-payment was put into the post-office, at -, Georgetown, addressed to the defendant at that place, It was proved., on t}ie part of the defendant, that at the time of hi's removal into.the country, and from-that time until after the-note in question fell due, he continued to be. the owner of the house in-Washington where he formerly lived; and which was occupied by his sister-in-law Mrs. Harbaugh. -That he came frequently and regularly every week, and as often as two or three-times. a week, to this'house; where he was employed .in winding up his former business and settling his accounts, and where he kept his books of account, and where his bank notices, such as were usually served by the rurtner of the bank on parties who were to -pay notes, were sometimes left, and sometimes at a shop opposite to his house; and where also his newspapers and foreign letters were left. That his coming -to town and so employing himself,- whs generally-known to persons having business with him. That his residence -in-, the country was- known to the-cashier of the bank. That'therp -was a regular daily mail from Georgetown to the city-of Washington, and that the defendant’s house was situated in-Washington, less tlian.a quarter of a mile from Georgetown. 1.
 

 There was also some evidence given, on the part of the plaintiffs, tending to-sh'ow that the usage of the bank in serving.notices in similar cases, -was conformably to .the one here pursued, and that the defendant was apprized of such usage. But
 
 *582
 
 that testimony may be laid out of view; as this Court does not found its opinion in any measure upon that part of the case. Upon this evidence the plaintiffs prayed the Court to instruct the-jury, that it'was-not incumbent on them to have left the notice of the nonpayment of the note at the house occupied by Mrs. Harbaugh, as stated in the evidence; but chát it was sufficient, under the circumstances stated, to leave.the notice at the post-office in Georgetown; which instructions the Court refused td give, but instructed the jurythat their verdict must be governed according to their opinion and- finding on the subject of usage which.had been given in evidence. .
 

 The jury, found a verdict for the defendant.
 

 ÍYorn this statement of the case it appears that the note was made at Georgetown, payable at the Bank of Columbia, in that town. That the defendant, when he endorsed the note, lived in the county of Alexandria, within the-District of Columbia, and having what is alleged to haye been a place of business in the city of Washington; and the notice of non-payment was put into the Georgetown, post-office addressed to the defendant at that place, by which it is understood,' that, the notice was either enclosed in a letter, or the notice its,elf sealed'and .superscribed with the name of the defendant, with the direction 41 Georgetown” upon it; and whether thi& notice is sufficient •is the question, to b.e decided;
 

 ■If it should be admitted, that the defendant had what is usually balled a place of business in the city of Washington, and that notice served there would haye been good; it by no means follows, that service at his place of residéftee, in a-different place, would not be equally good.. Parties may be and frequently. are so. situated, that notice may well be given at either of’several places. But the evidence does not show that the defendant had a place'of business in the city of Washington, according -to the usual commercial understanding-of a place of business. There was no public notoriety of any description given to it as such. .No open- or public business of any kind carried on, but merely occasional employment there; two or three time's a week, in a house occupied by. another person; and the defendant only engaged.in settling up hi's old'business. in this view of the case the inquiry is narrowed down to the single point, whether notice through-tffi post-office at Georgetown .was good; the' defendant residing in the country two or three miles, distant from that place, in-the county of Alexandria.
 

 The general rule is,-that the party whose duty it is to give notice'in such cases, is bound to use due diligence in communicating such notice. But it is not required of him to see that the notice is.brought home to-the party. Hé may employ the
 
 *583
 
 nsual and ordinary mode of conveyance, and whether the notice reaches the party or not, the holder has done all that the law requires of him.
 

 It seems at this day to be well settled, that when the facts’ are ascertained arid undisputed, what shall constitute due diligence is a question of law. This is certainly best calculated to have fixed on uniform rules on the subject, and is highly important for the safety of holders of commercial paper.’
 

 And these rules ought to be reasonable and founded in general convenience, and with a view; to’clog, as little as possible,’ consistently with the safety of parties, the circulation of paper of this description; and. the rules which’have been settled ok this subject, haye had in view these objects. Thus,>?heri a par-’ ty entitled to notice, has in the same city or town-a dwelling- ’ house and counting-house or place of business, within the compact’ part of such- city or town, a notice delivered at either place Is sufficient, and if his dwelling and place of business be" within the district of a letter carrier, a letter containing such notice addressed to the party and left at the pfost-office, would also be sufficient. All these' are usual and ordinary modes of communication, and such-as' afford reasonable ground for presuming that the notice will be brought’home to the. party without’unreasonable delay. So when the holder and endorser live in different post .towns, notice sent -by the mail is 'sufficient, ’ whether it reaches the endorser' o„r not. And this fpr the same reason, that the mail being a usual channel of communication,, .notice sent by.it, is evidence of due diligence. And, for the .sake of general convenience it has been found necessary to enlarge this rule. And it is accordingly held, that when the party to be affected by the notice, resides’ in a different place from the holder, the. notice may be sent by the mail to the post-office néarest to the party entitled to such notice.. It has not been thought advisable, nor is it believed that it Would comport with practical convenience, to fix any precise distance from the post-office, within which the party must reside, in order to make .this a good service, of the notice. Nor would we be understood; as laying it,down as a universal.rule that the notice must be sent to the post-office nearest to the. residence of the party to whom ii is addressed. ■ If he was in the habit of receiving his letters through a more distant post-office, and that circumstance was known to the holder, or’ party giving the notice, that might be the more proper channel of communication, because he would be .most likely to receive it in that way; and it would be the ordinary mode,of communicating information to him, and therefore evidence of due diligence.
 

 In cases of’ this description, where notice is sent by mail to a party living in the country, it is distance alone or the usual
 
 *584
 
 course of receiving; letters which must determine'the sufficiency of the notice. The residence of the defendant therefore being in the county of Alexandria, cannot affect the question,, It was in.proof that the post-office in. Georgetown was the one nearest his residence, and only two or three miles distant, aid through which he usually received his letters. .The letter con-staining the notice, it is true, was directed" to him at-Georgetown. But there is nothing showing that this occasioned any mistake or misapprehension'with respect to the person intend-ed, ór any delay in receiving, the' no'tice. And, as, the letter Was thereto be delivered to the defendant, and-not to.be forwarded’ to any other post-office, the address was Unimportant, and could mislead no one. .
 

 No cases have fallen under the notice1 of the Court, which have, suggested any limits to the distance-from the post-office, within which a party must reside in order to make the service of-the notice in this manner good, Cases however, have occurred, where the distance was much greaterj than. in the ope now before the Court, and the notice held sufficient. (16
 
 John.
 
 218.) In cases where the party entitled to-notice.resides in the coun- - try, unless notice sent by mail is-sufficient, á speeial messenger must be employed for the purpose of serving it. And we think that the present case is cléárly-one which does not impose upon the. plaintiffs, such duty. We do not mean to say no such cases can arise* but they will seldom, if ever, occur, arid at alh .events such'a course ought not to be-required of a holder, except under very special circumstances. Some countenance has lately been given to this.practice in England in extraordinary cases, by, allowing the. holder to recover of the endorser the expenses of serving notice by a special messenger. The case of Pearson vs. Crallan, (2
 
 Smith’s Rep.
 
 404. Chitty, 222,
 
 note,)
 
 is one of this description. But in that case the Court did not say that it was necessary to send' a special messenger, and it was left to the jury to -decide whether it Was done wantonly or not. "The holder is not-bound to use the mail for the purpose of sending notice';. He
 
 may
 
 employ a special inessenger, if he , pleases, but no case has been found where the English Courts have directly decided' that he
 
 must.
 
 To cpinpel the holder to incur such-expense would’ be unreasonable, and the policy of' adopting
 
 k
 
 rule' that will throw such ,an increased charge upon 'commercial paper, 'on the’party bound to pay*, is. at; least very questionable. .
 

 ■ We are accordingly of opinion’ that the notice of: non-payment was duly, served upon the’.defendant, and that’thé Court erred in refusing so to instruct the jury.
 

 Judgment reversed and- a
 
 venire facias de .novo
 
 awarded.'