## McGREW vs. TOULMIN.

1. Where the maker of a bill of exchange, had resided within sixteen or eighteen miles of the seat of justice of the county, in which he lived, and where he had been in the habit of receiving his letters ; but during a period of three months, had received his letters at another office, within fourteen miles of his residence—held that notice of the dishonor of his bill, sent in due time to the first post office, was sufficient diligence to charge him.

In error from Marengo Circuit court. This was an action brought by the holder of a bill of exchange against the maker.

The bill had been dishonored; and of this the plaintiff had sent the defendant notice, directed to Linden, the seat of justice of Marengo county, the county of the defendant's residence. It was in proof that defendant lived within sixteen or eighteen miles of Linden, and within fourteen miles of Demopolis, that he had formerly been in the habit of receiving his letters at Linden, but had for more than a year previous, been in the habit of receiving his letsers at Demopolis. The counsel for the defendant below, moved the court to instruct the jury that the sending of notice of the dishonor of the bill to Linden, was not, under the circumstances, sufficient diligence to charge the maker of the bill. The court refused to give the instructions asked for. And this refusal was the cause assigned for error in this court.

LIPSCOMB, C. J.—This action was brought in the Circuit court of Marengo county, by the holder of a bill of exchange against the maker. The only question raised on the trial and reserved for revision, is as to the degree of diligence used by the holder, in

giving notice to the maker of the dishonor of his
bill.    The notice was sent by mail to the maker at
Linden.    It was proved that the maker resided four-
teen miles from the town of Demopolis, and that for
more than a year prior to the maturity of the bill, he
had been in the habit of receiving his letters at the
post office in that town.    That he had formerly been
in the habit of receiving them at Linden, the seat of
justice, for the county of his residence.    And that his
own residence had not been changed, and that it was
sixteen or eighteen miles from Linden.

The counsel for the defendant below, asked the
court to instruct the jury that this was not sufficient
diligence to charge the maker.    But the court in-
structed the jury that the notice, as proven, was suf-
ficient, and the judge went on to give some reasons
why the notice should be sent to the seat of justice;
in preference to any other place, when it is sent by
mail.    The refusal of the Judge to give the charge
requested, is assigned for error.    If the judge did
right in refusing to give the instructions prayed
for, his reasoning, however erronious, is not a suffi-
cient ground for reversing the judgment.    It is the
duty of the holder to use reasonable means of giving
notice to the maker : if he knows the maker is in the ha
bit of receiving his letters at one office, he would not dis-
charge this obligation, by sending him notice, at an-
other office.    In the absence of all information as to
where he receives his letters, it would seem but rea-
sonable that the notice should be directed to the office
supposed to be nearest his place of residence.    But
from the situation of our country, mail routes and
post offices are fluctuating, new ones established and
old ones discontinued ; hence it often occurs that it

would be extremely difficult to ascertain the nearest post office to the residence of a gentleman in the country. Under circumstances of so much uncertainty that he would be most likely to receive the notice, when directed to the post office at the seat of justice for his county, would be but a reasonable conclusion. In the case under consideration, there are two circumstances that go very much to strengthen the sufficiency of the notice given by the holder; the trifling difference in the distance between the two post offices, from the maker's residence, and the fact that he had at one time been in the habit of receiving his letters at the office to which the notice was sent. If the holder of this bill was aware of the fact that Demopolis is something nearer the maker's residence than Linden, yet from his having formerly received his letters at the latter place, it may have been believed that he continued to receive them there, unless he had been advised of the change. We all think, therefore, that under the circumstances of this case, the court below very properly refused to give the charge prayed by the counsel for the defendant below; and that the judgment must be affirmed.

In this case, I do not think that the question, whether the reasonableness of the diligence to be used, for the purpose of fixing the liability of the maker, is one of law, to be decided by the court, or one of fact, for the jury, is at all involved. But, if it was, I should adhere to the rule, as laid down by this court, in the case of *Brahan & Atwood* vs. *Ragland*.[a] I have no disposition to enlarge the rule laid down in that case; but I still believe, that it is correct.— The fact, that the bill was made payable at the Nashville Bank, did not escape the vigilance of the court,

[a] Ala. Rep. 85.

in their examination of that case; but they were gov-
erned and controlled by the consideration, that there
was no uniform rule, to which they could resort, for
the purpose of determining the point of time that would
be a limit to vigilance and industry, and be the com-
mencement of negligence. The custom of London
could not apply to our situation, and we might de-
pricate, with as much propriety, the application of
the rule of the city of New York, as Judge *Spencer*
did the rule of Westminster to New York. But, if
the fact that the transaction being between merchant
and merchant, could vary the result, we would not
be authorised to infer that fact, from the paper being
made payable at bank. Foreign bills are so gene-
rally the instruments of mercantile operations, that
the exceptions, perhaps, should not vary their char-
acter; but this is not now the case, whatever it for-
merly may have been, with inland bills—the latter
are most usually drawn by planters in the country,
on their factors, in anticipation of the proceeds of
their cotton crops: and the circumstance of their be-
ing made payable at bank, can no more give them
the character of mercantile transactions, than if the
promise to pay should be direct to the bank. My
objection to laying down any fixed and unbending
rule on the subject, is founded on the consideration,
that so many circumstances may interpose, and would
interpose, to call imperiously for its modification, that
it would be fully as uncertain, and perhaps more so,
than the different verdicts of different juries. If we
should say, that notice of the dishonor should be per-
sonal, when the maker resided within the city where
his bill was payable, it might at first be a reasona-
ble rule; but circumstances might change, and I

M'GREW *vs.* TOULMIN.

have no doubt that the rule recognized by Judge Spencer in *Ireland* vs. *Kipp*,[a] has already become one of much inconvenience and hardship, in the city of New York : from the great and increasing population of that city, personal service must be daily becoming difficult, and will not be required much longer.—— Again, when we say that notice should be put in the mail, the day after the dishonor of the bill, when the maker resided at some other place, directed to the nearest post office to his place of residence : it would often occur that the mail would not leave for eight or ten days after, reason and common sense would approve a relaxation so far as to say, if the notice was put in the office in time to be mailed by the first mail going out for the place to which the notice was directed, would be sufficient. Again, there might not be a post office within a day's ride of the place, where the note or bill was payable ; or if there was one within ten or fifteen miles, circumstances that human precaution could guard not against, might interpose to prevent the notice from being so lodged in the office.—— These are not extreme cases of rare occurrence, but, in the present situation of our country, would often occur. If we were in fact a commercial people, and bills and notes only payable at post towns, or great commercial depots, such difficulties would not present themselves. But until the great body of the population of this country has changed their habits and pursuits, it does seem to me, that the adoption of the rule of the city of London, or that of the city of New York, would be the extremity of absurdity. The rule laid down *Brahan and Atwood* vs. *Ragland*, has been the acknowledged law of the land for ten years past. If it has been found inconvenient in practice, or subver-

[a] 11 John. R. 231.

sive of the ends of justice, it is very easy for the legislature to apply a remedy.

TAYLOR, J.—The plaintiff in this court, assigns, as erroneous, the charge of the court, below, to the jury, as stated in the bill of exceptions. The charge was, that notice to the drawer of the dishonor of a bill, directed in due time by mail to the post office at the seat of justice of the county in which the drawer resided, was sufficient to charge him. The draft in this case was drawn on the 1st April, 1826, at Mobile, on Alonzo Dickens & Co. of that place, and was payable the 1st January, 1827. By the evidence, as stated in the bill of exceptions, it appears that the drawer lived in Marengo county, about fourteen miles from Demopolis, which was a post town ; and about sixteen or eighteen miles from Linden, the seat of justice for that county : That during the year 1825, he was in the habit of receiving his letters at the post office at Linden, but in the year 1826–7, he seldom visited that place, and letters to him were directed to the post office at Demopolis.

A holder of a bill of exchange is bound to use due diligence to give notice of its dishonor to the drawer and indorsers, in order to charge them. This is a general rule ; but what constitutes due diligence must always depend upon circumstances, such as the residence of the parties, the convenience afforded by mail routes, &c. In England, if a notice of the dishonor is put in the post office in due time, it is sufficient, although the holder and other parties live in the same town : In the United States it has been, I believe, uniformly decided, that in such cases personal notice must be given, or due diligence used to give such no-

tice, as sending to the house or counting house 'of the parties in the usual hours for that purpose—*Ireland* vs. *Kipp*[a]—*Williams* vs. *the Bank of the United States*[b]. [a]11John. R In the last mentioned case it was decided, that where [b]2Peters96. the parties lived in New York, and notice of the non-payment of a note was put into the post office in the city, directed to the indorser, who resided at Kip's Bay, (about three miles and a half the post office, and within the city,) but the letter carriers did not carry letters to that distance, that the notice was insufficient.

But if the party to be affected by notice lives in a different city, or place, from the holder, the notice may be sent by mail to the nearest post office to the party entitled to such notice. This is the rule both in the United States and in England—see *Ireland* vs. *Kipp*[c]—*Freeman* vs. *Boynton*[d]—*Bank of Columbia* [c]11John.R vs. *Lawrence*[e]—*Bank of the United States* vs. *Carneal*— 231 *Mead* vs. *Engs*.[g] But if the holder does not know 483 the residence of the party to be affected by notice, 578 and use proper diligence to ascertain where he lives, [f]2 Peters, and send a notice to the place that he is thus induced [g]5 Cowen, to believe is the right one, it is sufficient, although he may live elsewhere – *Chapman* vs. *Lipscomb*.[h] [h]1John294

It would seem, therefore, that where the parties do not live in the same town, notice should be forwarded immediately after the dishonor of the bill to the post office nearest the residence of the person to be affected by it, if that be known; and if not, that reasonable diligence should be used to ascertain the place of residence, and nearest post office to it, and the notice should be directed there. In the instructions given in this case there is a wide departure from this rule. The jury were told, that to direct a letter to the post office at the seat of justice of the county

in which the party resided would be sufficient. Why is this better than the post office at any other business place in the county? It is true, that most persons have business of some kind or other at the seat of justice of their county, sometimes more, and sometimes less often; but hundreds in almost every county in the State, carry on their correspondence through other post offices, and never think of going to the seat of justice, with the expectation of receiving letters forwarded by mail. It sometimes happens, and indeed, in a few instances, is the case in this State, that there are not more than two or three houses at the seat of justice, when there are flourishing towns in the county. A few years ago, St Stephens, in Washington county, was a place of considerable commerce, while only one or two families resided at the seat of justice. St. Stephens, it is true, has gone down, but the other place flourishes no more now than formerly. Selma is a far more commercial place than Cahawba, and it can hardly be supposed that the situation lately selected for the location of the seat of justice for Monroe, will ever rival Claiborne, in importance. It would be tantamount to deciding that the merchants of St. Stephens, Selma, and Claiborne should be bound as drawers and indorsers, without notice, to recognize, as law, the charge given in this case, by the Circuit court. We are perfectly aware, that under the improvements lately made, and still progressing in the post office department, every neighborhood almost is accommodated with a post office, and no doubt in our most populous counties, two thirds of the people carry on their correspondence through other offices than those kept at the seat of justice.

It is contended, however, by the counsel for the defendant in error, that, even should the charge of the court below, be erroneous, yet the evidence would have required, at the hands of the jury, the same verdict. He insists that as the bill was drawn in Mobile, on a house in that place, that notice put in the post office of that city, directed to the drawer, would have been sufficient; and if it would not, yet as Linden was the post town of the plaintiff in error, until a short time before the date of the draft, the defendant had a right to suppose it continued to be, as plaintiff had not changed his residence.

The first position certainly cannot be sustained.— The place of drawing a bill cannot affect the question of notice. This is not a matter of form but of substance; it is thought to give the party entitled to it, material advantage in securing himself from loss.— The steps taken, then, must be calculated to afford him this advantage. Drafts are often, in the course of trade, drawn in one place, by persons who are known by all the parties to them, to live in another. In *Fisher* vs. *Evans*,[a] it was held that it was not sufficient to look for the drawer at the place the bill was dated, if his residence be elsewhere.

[a] 5 Binney, 541

The other ground I consider more tenable. It appears that the correspondence of the plaintiff in error was conducted through the post office at Linden, previous to, and during the year 1825. His residence was nearly equi-distant from the two post towns, being only from two to four miles further from one than the other, and fourteen miles from the nearest. It is by no means a strained presumption to suppose that the defendant in error knew in 1825, that plaintiff's letters were directed to Linden, as we find the latter

on the 1st April, 1826, drawing this bill in favor of the former; and if so, he was authorised to believe that such a direction would still be the proper one, at the time this notice was sent; more especially as it appears that Demopolis had been a post town during, and probably before, 1825. For this reason I consider the diligence used to effect notice was sufficient.

It is said, however, that the charge of the court was on fact, and not law; and that the jury should have been left to determine whether the notice was sufficient. The question of the sufficiency of a notice, in such a case, I consider to be a mixed one of law and fact. It is true there may be cases where it becomes much more a question of fact than in others; as when the facilities of mail routes and post towns for the transmission of notices do not exist, and the parties live a considerable distance apart, and it would be burdensome to effect personal notice. They are such extraordinary cases, as I understand him, to which Lord Mansfield alluded as those for which no rule can be established, when he said, in the case of *Tindall* vs. *Brown*,[a] "wherever it is possible to lay down a rule, the reasonableness of notice should be decided by the court." I know it has been decided by this court, in the case of *Brahan and Atwood* vs. *Ragland*,[b] that the reasonableness of notice must be determined on by the jury. That decision goes upon the ground that all the rules established in different countries are arbitrary; that they are intended for commercial communities; that we are an agricultural people, and therefore no rule on the subject should be established here. The case was decided about two years and a half after the first organization of the Supreme court of our State, when our popu-

[a] 1 Term. R. 168

[b] Minor's R. 85

lation, commerce, and facilities of intercourse were in a far different situation to what they are now. But even at that day I could not subscribe to the correctness of the decision. It seemed to me that although the scattered state of our population, and the want of post route facilities, ought to have produced a greater disposition to admit exceptions to any general rule, yet some such ought to have been established to have effect, at least, in the commercial parts of the State. But there is an important consideration which the court appear to have overlooked in that case; it is, that promissory notes payable in bank, which that was, and bills of exchange, are commercial instruments. Whenever agriculturalists turn tradesmen in their manner of dealing, they have no cause for complaint if mercantile usages.are brought to bear upon them. It is of the utmost importance to the mercantile community that there should be known, and fixed legal rules upon this subject. To leave it to the uncertain opinions of juries, no two of whom would probably think.alike with regard to it, would render decisions most uncertain and fluctuating. At this day we are a highly commercial people; bills of exchange are daily used for the purpose of receiving and transmitting funds, and our situation requires as much certainty on this subject as that of any other community.

Among commercial men punctualtty is all important, they so consider it: the dishonor of their paper is, therefore, a strong indication that they are in, at least, a doubtful situation as to solvency. It is often the case that on one day a merchant is in good credit, and the next a bankrupt. When, therefore, an occurrence takes place of so suspicious a character as

the dishonor of his paper, it is of the utmost importance to those who are liable upon it as drawers, or indorsers, should receive the earliest possible notice, that they may endeavor to secure themselves, before other creditors have pressed in and exhausted the debtors means. The difference of one day would often be as disastrous to the parties, as that of a year, and for this reason the utmost diligence is required of the holder in apprising the parties responsible to him of the dishonor of the paper, without which they are discharged. Accordingly we find it required by the decisions of the courts of the different States and of the United States, as well as those of England, that where the parties live in different towns, the notice shall be forwarded by the first post after the dishonor of the paper.

Under the decision of *Brahan and Atwood* vs. *Ragland*, juries composed of commercial men would be disposed to enforce all the rigor of commercial law, while those composed of planters would look more to the effect which they could gather from the testimony which had been produced upon the parties, than any thing else. If no notice had been given for months, although it might have been done in a day or two, yet if they formed the idea from the testimony that no material loss had been sustained by the defendant on this account, they would pronounce it sufficient.

I can not perceive the great inconvenience which would result from adhering to the rules on this subject which have been adopted in England, modifying them, of course, so as to suit our situation. Agriculturalists have but little to do with commercial paper in their intercourse with each other. It is true

they are sometimes parties to it when they have dealings with merchants in bank; but no hardship would result to them, from laying down defined rules for their government, in such cases: and, as said before, it is all important to the commercial part of the community, to whom nine-tenths of this kind of paper is confined.

I am of the opinion, that sound policy requires, that the reasonableness of notice should, as a general rule, be determined by the court—the jury ascertaining the facts, that notice had been delivered, and when.

In this case, from the circumstance of Linden having been the post town of the plaintiff in error, up to within three months of the date of the bill sued on, and his residence being near equidistant from that place and Demopolis, the nearest post town to him, and its being presumable, from the facts, that the defendant was ignorant of the plaintiff's having changed the office through which he corresponded, I think the court would have been bound to have instructed the jury, that if they believed these facts, they should find for the plaintiff below: and, as they are admitted on the record to have been proved, the judgment should be affirmed.