May Term,
1845.

BELL
v.
THE STATE
BANK.

*W. A. Porter*, for the appellees.

Saturday,
July 19.

---

## BELL and Another *v.* THE STATE BANK.

A printed form of a promissory note, payable ninety days after date at the branch bank at *Lafayette*, was signed by *A.* and indorsed by *B.;* blanks were left for the date, the payee's name, and the sum ; and in the margin there was a printed direction to "credit the drawer," signed by *B.* The note, in this form, was submitted by *A.* to said bank for the purpose of renewing a note of the same parties in bank about to become due. *A.* not being prepared to pay the part of the debt required, the bank refused to renew at ninety days, but was willing to do so at thirty days. *A.* being informed of this by the clerk of the bank, directed him to make the note payable in thirty days, which, without *B.'s* consent, was accordingly done ; the word ninety being struck out and thirty inserted in its place. The blanks were

filled, &c.—the one for the date with the day when the old note fell due. *May Term,*
*Held*, that *B.*, in consequence of the change thus made in the time of pay-    *1845.*
ment of the note, was not liable as indorser thereof.

If the indorser of a promissory note payable at a bank at *A.*, reside four or five    BELL
miles from *A.* in the country, and use the post-office at *A.*, it being as    v.
near his residence as any other, notice of the non-payment of the note may    THE STATE
be given to him, by putting the notice into the post-office at *A.* directed to    BANK.
him there.

ERROR to the *Tippecanoe* Circuit Court.    *Saturday,*
*July 19.*

DEWEY, J.—The state bank, the indorsee of a promissory
note, brought a joint action of assumpsit against *Benbridge*
the maker, and *Bell* the indorser thereof. The note, as
described in the declaration, bears date *November* 3d, 1841,
at *Lafayette*, and is for 534 dollars payable and negotiable
at the branch bank at *Lafayette* in thirty days from date.
Plea, the general issue by both defendants, and sworn to
by *Bell*. Verdict for the plaintiff; motion for a new trial
overruled; and judgment upon the verdict.

It appeared in evidence, that the note described in the
declaration was originally a printed form of a ninety-day
note, payable at the branch bank in *Lafayette*, and purport-
ing to be drawn at that place, with blanks for the date, the
name of the payee, and the sum to be paid. In this shape
it was signed by *Benbridge* and indorsed by *Bell*, with a
printed direction in the margin to "credit the drawer," also
signed by *Bell*. This blank note was delivered to *Benbridge*,
and by him submitted to the board of directors of the branch
bank, for the purpose of renewing a ninety-day note between
the same parties, which fell due on the 3d of *November*, 1841.
As *Benbridge* was not prepared to pay the usual curtailment
of the amount of the old note, the directors refused to renew
at ninety days, but were willing to do so at thirty days.
This determination was made known by the clerk of the
bank to *Benbridge*, who directed the clerk to make the note
a thirty-day note; the blanks were filled up accordingly;
and the word ninety in the blank note was stricken out,
and thirty inserted in its place, making the note such as it
is described in the declaration. *Bell* gave no consent to the
change of the note from a ninety-day to a thirty-day note.
It was also proved that when the note became payable, and
on the last day of grace, a formal demand of payment was

May Term, made at the bank, and that, on the same day, notíce of non-
1845.    payment was put into the post-office at *Lafayette* directed
BELL     to *Bell* at that place; that *Bell* lived in the country from
v.       four to five miles from *Lafayette*, and about the same dis-
THE STATE
BANK.    tance from *Columbia*, where there was also a post-office;
that these were the nearest post-offices to the residence of
*Bell;* and that *Bell* had been in the habit of using the post-
office at *Lafayette*.

The questions are, is *Bell* an indorser of the note described
in the declaratïon? and if so, was the notice of non-payment
sufficient?

With regard to *Benbridge's* liability, there is no doubt.
He clearly gave authority to make the note what it is. But
as this is a joint action against the maker and indorser
(which the statute authorizes,) the judgment must be revers-
ed entirely, unless it is valid against both defendants.

The evidence does not present a case of the alteration of
a perfected note, but raises a question of the due execution
of an implied authority, arising from the indorsement of a
note in an unfinished and imperfect state.  The general rule
of law certainly is, that if a person indorses or signs a blank
paper or note, and delivers it to another person that he may
raise money with it, he authorizes that other person to
render him liable in any amount, and at any time, he may
please.  There is no restriction in the implied authority in
such a case.  *Russel* v. *Langstaffe*, Dougl. 514.— *Collis* v.
*Emmett*, 1 Hen. Bl. 313.  It must be evident that the nearer
the blank instrument approaches to perfection, the more
restricted must be the authority; if the sum, date, or time
of payment be inserted, they cannot be changed.

In the case under consideration, the blank note was not
indorsed by *Bell* for the purpose of enabling *Benbridge* to
raise money upon it in the market, but that he might renew
a note in bank between the same parties.  We do not mean
to say, that had *Benbridge* abused the trust reposed in him
by filling up the note in a manner not contemplated by *Bell*,
and by negotiating it, the purchaser, if ignorant of the im-
proper conduct, could not have recovered against *Bell*.  But
the bank was apprized through its officers of the real object
of the note, and, therefore, knew the extent of the implied

authority of *Benbridge* in regard to filling up the blanks. What was the extent of that authority? In our opinion it was limited to the right of using the note, so as to make it answer as a ninety-day note in the place of the note already held by the bank; and which became payable on the 3d of *November*, 1841. Such an authority as this certainly did not empower *Benbridge*, or the bank, to make the new note payable in thirty days from the time of the maturity of the old note, which was very properly made the date of the substitute. There were two certain restrictions of the implied authority of *Benbridge* apparent upon the face of the blank note, one had respect to the length of credit, and the other to the place of payment; and he had no more right to alter the first than the last. It will scarcely be contended he was authorized to change the place of payment.

Two cases are particularly relied upon by the defendant in error, to show that *Benbridge* had authority to make the note payable in thirty days from its date instead of ninety. The first is the *Mechanics' and Farmers' Bank* v. *Schuyler*, 7 Cowen, 337, in note. The promissory note on which that case was founded, was delivered by the indorser to the maker without any date; the maker antedated it so as to make it run nearly thirty days less than it would, had it been dated when it was made, and then negotiated it to the bank, which was ignorant of the circumstances stated. The indorser was held liable, on the ground that the bank was a *bona fide* indorsee without notice, and could not be affected by the abuse (if any existed) of the implied authority of the maker in antedating the note. That case can have no application to this, for here the bank was apprized of all the circumstances, and was bound to know that the implied authority of *Benbridge* was exceeded. The other case referred to is *Mitchell* v. *Culver*, 7 Cowen, 336. The note in that case was intrusted by the indorser to the maker for the purpose of raising money upon it; there was a blank for the date, which was so filled up as considerably to shorten the time of payment; and this was done with the knowledge of the person who became the holder of the note. It was held, nevertheless, that he could recover against the indorser; that his knowledge of the antedating of the note made no

difference. The ground of the decision was, that the indorser by intrusting the note, with a blank for the date, to the maker for the purpose of raising money upon it in the market, conferred upon him an implied authority to fill the blank as he might see fit. Under this view of the subject, it is evident that the knowledge of the holder of the antedating of the note by the maker could make no difference, for it was within his supposed authority to do so. But there is this marked difference between that case and the case under consideration. There, the general object of the note which was put in circulation was to raise money in the market; here, the object was very different; it was not contemplated by any of the parties, that a new debt should be created upon the note intrusted to *Benbridge*, but all knew that its specific and only purpose was to effect a renewal of a ninety-day note in bank, by the substitution of a like note after the usual curtailment of the debt. The authority to *Benbridge* was to effect that object and no other—at least, such was his authority when dealing with those acquainted with all the circumstances of the case. He had no right, and could confer none, to strike out ninety and insert thirty in the note. We are of opinion, therefore, that *Bell* is not the indorser of the note described in the declaration. The evidence did not authorize the verdict; there should have been a new trial.

As to the question of notice: It was settled in *The Bank of Columbia* v. *Lawrence*, 1 Pet. 578, that where an indorser lived on a farm two or three miles from the nearest post-office, a notice of non-payment put into that post-office, and directed to the indorser at the town in which the post-office was, was a legal notice. Upon the authority of that case, we think the notice in the present instance was sufficient.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*D. Mace*, for the plaintiffs.

*Z. Baird* and *R. C. Gregory*, for the defendant.