### BANK OF LOUISIANA *v.* J. TOURNILLON, JR.

Where notice of the non-payment of a note is sent by mail to the endorser, it should be directed to the post office, if known, nearest to his residence. But if he is in the habit of receiving his letters at a more distant post office, or through a more circuitous route, and that fact is known to the person sending the notice, notice sent by the latter mode will be good.

The rules prescribing the diligence to be used in communicating notice of the non-payment of notes and bills, are founded in general convenience, and should be interpreted and applied so as to impede as little as possible, consistently with the safety of parties, the circulation of commercial paper.

APPEAL from the District Court of Assumption, *Randall,* J.
*C. A. Johnson,* for plaintiff, cited *Citizens' Bank* v. *Walker,* 2 Ann. 792. *Canal Bank* v. *Barrow,* 2 Ann. 326.

*Ilsley,* for defendant and appellant, cited *Follain* v. *Dupré,* 11 Rob. 454. *Nicholson* v. *Marden,* 3 Rob. 302. *Canal Co.* v. *Barrow.* 2 Ann. 326. *Bird* v. *McCalop,* 2 Ann. 351. *New Orleans and Carrollton Bank* v. *Patton,* 2 Ann. 352. *Harris* v. *Alexander,* 9 Rob. 151. *Mechanic's Bank* v. *Compton,* 3 Rob. 4.

CAMPBELL, J. The defendant is sued as endorser of a promissory note for $370, made at Donaldsonville, April 27, 1849, and payable to his order, at the Bank of Louisiana at Donaldsonville, twelve months after date. The only question involved is, as to the manner in which notice of non-payment was given to the endorser; no objection being made to the sufficiency of the notice in point of time.

The material facts before the court on this subject, are that, on the day of protest, the notary, who made it, deposited in the post office at Donaldsonville, a written notice in due form, addressed to Mr. *J. Tournillon,* Donaldsonville P. O. That the notary making the protest, (and who deposed to the manner of service of notice, for the certificate is not relied on,) was the deputy of the post master of the Donaldsonville post office, from a period long anterior to the 30th of April, 1850, down to the month of October, 1850, and knew of his own knowledge that the defendant regularly, twice a week, on the arrival of the semi-weekly mails, sent his servants or called himself at the post office in question for papers and letters which frequently came there to his address. The witness likewise, before depositing the letter in the Donaldsonville post office, was informed by the post master, upon inquiry, that that was the post office of the defendant.

*Andrew Gingry* was post master on the 30th April, 1850, date of the protest, and so continued till October following, when *Victor Maurin* became post master.

*Gingry* swears that newspapers which he names, not occasionally sent, but forwarded as regularly as published and from the publishing offices, were received at his office as long as he was post master, addressed *J. Tournillon.* Here it should be noticed, that it is in evidence (testimony of *D. Leblanc,*) that the defendant is known as *Julien Tournillon,* and his father as *St. Julien Tournillon.* It is also admitted that in the notarial acts passed by the defendant and those passed by his father, the same distinction of names is preserved. The address of the newspapers regularly received as above stated by *Gingry,* shows that they were for the defendant, and *Gingry* goes on to state, that all mail matter so addressed was regularly called for by the servants of the *Tournillon* family; that it had been for years the invariable practice of the office to deliver all such matter to these servants, and that no objection or complaint was ever made respecting it. That there was a box in his office, which, indeed, stood in the name of *St. Julien Tournillon,* the father, but that it was the receptacle of all the mail matter which came to his office to the address of either the father or the son, and that this mail matter was delivered as aforesaid to the servants of the *Tournillon* family. That he knew these servants from having often seen them in the personal service of the defendant, and never knew defendant to have any other post office so long as he was post master, to wit, from 1838 to October 1850. In this connection, it should be noticed, that it is proved by *Leblanc,* that the defendant and his father not only resided on the same plantation but in the same dwelling, and form but one family; that the same fact is proved by *Crane,* witness for defendant, as well as the additional fact that the

servants of the *Tournillon* family, passed almost daily back and forth between their plantation and Donaldsonville.

*Maurin* states that he took charge of the Donaldsonville post office, October 1, 1850. He declares unequivocally, that the Donaldsonville office continued to be the office of the defendant up to the 30th September, 1851. After that time he says, that the regular mail matter to his address, such as newspapers, to which he was a regular subscriber, ceased to come there; that up to the time mentioned, and especially during the first four months after he took charge of the office, the servants of the defendant called regularly once or twice a week at the office, and received such mail matter as was in the office to the address of defendant.

*Crane*, the only witness for the defence, states that, on the 1st January, 1850, a new post office was created under the style of Crane's Forge Post Office, situated on the road between Donaldsonville and the plantation where defendant resides, which plantation is on the Bayou Lafourche, about seven miles from Donaldsonville. *Crane*, the witness, was the post master who took charge of this new office, as soon as it was created; and his testimony is relied upon to show a change of post office by the defendant prior to the 30th April, 1850.

In his examination in chief, *Crane* states, that "from the time the said post office was opened until October 1852, defendant received his mail matter, letters and newspapers, regularly at the Crane's Forge Post Office, and witness considered it as the post office of defendant from January, 1850, till October, 1852, when he ceased to officiate as post master."

On cross-examination, he states, that all the postage bills in the name of *Tournillon*, at his office, were paid by the father, and the newspapers received there were to the address of the father, though he thinks a greater part of the letters were for the son. He says nothing of any newspapers at all received at his office for the defendant; while, on the other hand, by the concurrent statements of *Templet, Gingry* and *Maurin*, it is affirmatively shown, that several newspapers to the address of defendant, and to which he was a regular subscriber, were regularly forwarded to and received at the Donaldsonville post office, and his correspondence also, as long as *Gingry* remained in the office, and for several months after *Maurin* became post master. It further appears that the Crane's Forge Post Office was nearer the residence of defendant than that of Donaldsonville, it being between Donaldsonville and defendant's residence; from which last, it was distant only one mile. Defendant contends, that not having been notified of the non-payment of the note, by letter addressed to him at the post office nearest his residence, his liability as endorser has been discharged.

The general rule of the commercial law doubtless is, that when the notice is sent by mail, it should be directed to the post office, if known, nearest the residence of the party whose liability is sought to be fixed. But this rule, though a general one, is not of universal application. In the case of the *United States* v. *Carneal*, 2 Peters, 551, Mr. Justice Story says: "If the party is in the habit of receiving his letters at a more distant post office, or through a more circuitous route, and that fact is known to the person sending notice, notice sent by the latter mode will be good. And where the party is in the habit of receiving his letters at various post offices, to suit his own convenience or business, it may be sufficient to send it to either." See also the *Bank of Columbia* v. *Lapce*, 1 Peters, 583 ; and *Follain et al.* v. *Dupré*, 11 R. 472.

After a careful consideration of the testimony, we are of opinion that the notice, as given, was good. From the facts of the case, it would have been sufficient, if addressed to the defendant, either at Donaldsonville or the Crane's Forge Post Office. The rules prescribing the diligence to be used in communicating notice, are founded in general convenience, and should be interpreted and applied, so as to impede as little as possible, consistently with the safety of parties, the circulation of commercial paper.

Judgment affirmed.