Harrisok, J.,
delivered tbe opinion of tbe Court.
There are two questions presented for our determination in this cause.
First, Was notice given to tbe indorser, Caruthers, sufficient to charge him?
Second, Was tbe defendant in error, the bolder of tbe note, barred from maintaining bis action on one of *364 the notes .which matured on the 4th day of February, 1859, six years haying expired before the adoption of the. amendments to the Constitution,. on the 22d of February, 1865?
Payment was demanded of the maker of the notes, on the day they respectively fell due, and was refused; and on the same day, as it appears from the certificate of the Notary Public, he “directed a written notice of the above instrument of protest to each, John P. Caruthers and Marcus J. Wright, and left the same at their respective offices.”
The certificate on the protest on each note, is in precisely the same words, except the date stated as the date on which the notices were directed and left, the 4th of February, 1859 and the 3d of September, 1859: that being the . date at which the notes respectively fell due.
At the several dates when the notes fell due, and when the Notary’s certificates stated that the notices were given the indorser, John P. Caruthers was Judge and Chancellor of the Common Law and Chancery Court of the City of Memphis. The discharge of his duties as Judge and Chancellor, required nearly all his time. He was usually to be found at the court-house. He had no residence, no family, no office at which he performed any publicly known business. He had two rooms on the third story, of a building known as the Blythe Building, in the City of Memphis, in which he had his library, or a portion of it, and in which he lodged. He boarded a part of the time during his judgeship; at the G-ayoso House, a public hotel, and perhaps a part *365 of the time at other hotels of the city. Before he went upon' the bench, in 1854, he had an office in the city in which he transacted his business, which was that of a Lawyer; but after he went upon the bench, he discontinued his said office,. and had only the rooms mentioned. In these rooms he was usually to be found when not employed in the court-house or elsewhere. The witnesses state, that, if they had occasion to find him on business, and had no knowledge that he was elsewhere, that they should have gone to the rooms mentioned, to find him; and that they had been in these rooms for the purpose of having him transact official business, granting fiats on bills for , injunctions, etc.; and that there had never beeú any offices in the third story of the building mentioned, at which any one had transacted his ordinary business.
The Court, (the late Hon. Thomas G. Smith, presiding,) instructed the jury: “That, if they believed from the evidence, that the defendant had an office at which he had transacted his ordinary business, and that the notices of the non-payment of the notes were left at his office on the day of the protests respectively, they would find for the plaintiff; and in determining whether the defendant, Caruthers, had such an office at which he so transacted his ordinary business, the jury would exclude from their consideration, the fact that he was usually discharging his official duties in the court-house, and confine themselves to the enquiry as to whether he had a known place at which he transacted his ordinary business.”
*366 The Court refused to charge the jury, at the request of defendants, that tbe notice, in order to charge the defendants, should have been left with some one at the defendant’s office, or it should be shown that no one was found there, upon the proper enquiry, to receive it. To these instructions, and the refusal to give those asked to be given, the plaintiff in error excepted at the time.
We think there was error in the charge of the Court, but none in his refusal to charge the law as asked for by plaintiff in error.
He charged the jury, as we have seen, that, “if they believed from the evidence, that defendant had an office at which he had transacted his ordinary business, etc.” *
We think, in view of the particular question raised by the proof, as to whether the office at which he had at one time transacted his business, was or was not his place of business at the time the notice was given, the charge that if defendant had an office at which he has transacted his business, etc., was erroneous and calculated to mislead.
The usual way of showing that notice was delivered or sent to the indorser, is by the certificate of the Notary, and the defendant in error in this cause, relies exclusively upon the Notarial certificate, to show that the notice was duly given.
Our Act of 1820, ch. 25, sec. 4, continued in secs. 1800 and 1801 of the Code of Tennessee, is, that, “In an action against the drawer or indorser of a bill of exchange, or any negotiable paper protested for non-acceptance, or non-payment, the Notary’s cer *367 tificate, either in or on the protest, that he gave notice of the dishonor of the paper, to the drawer or indorser, shall be prima facie evidence of the fact of such notice.”
This, as was said in Golladay, Cheatham & Co. vs. The Bank of the Union, was done to save the parties from the expense of taking a deposition, and the loss •of rights 'by the accident of death. In that case, reported in 2 Head, 57, the effect of the Notary’s certificate in or on the protest, was considered. The only proof of notice in that case, was the certificate of the Notary in the body of the protest, to-wit: “I then notified the drawers and indorsers.”
In that case, it was held, that it was not necessary for the Notary to state all the particulars necessary to make out a good legal notice, under the law merchant, as the Act of Assembly did not expressly require it. That the Notary is a public officer, and when he certifies that he has done an official act, it must be presumed that he has done it correctly, unless some statute or rule requires a particular mode, until the contrary appears. That it is .only made prima facie evidence. The presumption might be rebutted, and the burden of proving the contrary was upon the defendant, (the indorser.)
Now, as we have seen, the only proof of notice to Caruthers, is the certificate of the Notary, that he had delivered a written notice of the protest, “to each, John P. Caruthers and Marcus J. Wright, and left the same at their respective offices.”
This was prima facie evidence of the fact that the *368 Notary did deliver the notice to the plaintiff in error, and left the same at his office, for so it is stated; and although the Notary, under the ruling in Golladay, Cheatham & Co. vs. Bank of the Union, (which we do not feel inclined to disturb,) was not bound to state all the particulars necessary to make out a good legal notice, under the law merchant, yet, this prima facie evidence, this presumption in favor of the correctness of the statement made by the Notary, may be rebutted by the plaintiff in error, who might show, either that the statements therein were in point of fact, untrue, or that such facts did in reality exist, as would make the notice insufficient.
Can it be said that the certificate of a Notary, that he left the notice at the office of the plaintiff in error, was sufficient, when the; plaintiff in error in; rebutting the presumption of the correctness of the fact stated by the Notary, as he has a right to do, has shown that, at the time the notice was stated to have been left at his office, the plaintiff in error, had no office in Memphis ; that he had discontinued his office after he went upon the bench in 1854 ? It would be an utter absurdity to say, that, because the plaintiff in error occupied an office, which was his place of business, being the place where he had transacted his business as a lawyer in 1854, that that particular house or room would still be his office, when he had discontinued it as his office, five years before. He was, as he had been, at least from 1854, a prominent man in Memphis; occupying a position which would give him notoriety. The proof shows that he was engaged in the court-house, discharg *369 ing his duties as Judge and Chancellor, nearly all the time. He was usually found there; and we cannot believe that, if anything like the enquiries or diligence, which the law requires, had been made, there would have been any difficulty in giving him the notice, in person or at his residence; and there was in this a want of that diligence which the law requires. He had no place of business, such as comes within the definition given in the law text books, or in the Bank of Columbia vs. Lawrence, 1 Peters, 582. In fact, the proof clearly shows that he had no place of business, being engaged nearly all the time, in the court room, sitting as Judge and Chancellor, and having lodgings, at which though he had his library, he transacted no business, as we must infer from the proof, except, now and then when these lodgings, which were in the third story of a building in the city, were invaded by a complainant in an attachment or injunction bill, who wanted a fiat.
But, it is insisted, the fact that the office at which the notice in this case was left, was his place of business, was passed upon by the jury, and we should not review it, even if the question was a pure question of fact. We would feel inclined to hesitate in the face of the proof in this case, to regard the finding of the jury as conclusive, especially where there was probable error in the charge of the Court. If His Honor in the Court below, had charged the jury that they should determine from the evidence, whether the plaintiff in error, at the time of the maturity of the note, had or had not a place of business, and *370 whether the notice was left at such place of business, even then the question might have been a mixed question of law and fact; for, says Judge Story, in his work on Promissory Notes, sec. 313, “what constitutes the domicil or place of business of the party entitled to notice, is, in many cases, a mixed question of law and fact.”
The Court below, should, we think, have instructed the jury as to what in law it took to constitute a place of business, and left the jury to determine the question of fact under his instructions, instead of instructing them in a way that assumed, that if he had an office at which he had transacted his ordinary business, and the notices were left there on the day of the protest, that they should find for the plaintiff; and instead of cutting off all enquhy by the jury as to how long he was daily engaged in the court room as Judge, especially, as in relation to the last named matter, the proof may have shown a state of facts excluding the hypothesis, that he could have been at any place of business within business hours, or that he had any place of business. At any rate, we deem it proper, and safer to remand the cause for a new trial.
And it is not necessary to decide, now, 4the second question made here by the plaintiff in error. The question is one of very great importance, and. is to be argued in other causes now pending in this Court.
Reverse the judgment, and remand the cause for a pew trial.
Smith, Judge, dissented.