BANK OF COMMERCE, Respondent, *v.* B. M. CHAMBERS ET AL., Appellants.

### June 12, 1883.

1. PROTEST — NOTICE — DUE DILIGENCE. — Notice of protest sent by mail is insufficient where the holder and the indorser of the protested paper reside at the same place.

2. —— A notice of protest sent by mail to a member of congress at Washington, while he is engaged in discharging his duties as such, is good.

3. —— Where the indorser has different places of business and different places of residence, notice must be sent to the place where, upon diligent inquiry, it seems most likely to reach him with promptness.

4. —— Where the indorser is in the habit of receiving his mail at other than the general office of a place, which fact is unknown to the notary, notice addressed to the place generally is sufficient.

5. —— It is not essential to the validity of a notice of protest that it should be addressed to the post-office at which the indorser gets his mail if, in the usual course of the mail, it will be sent to and delivered from such office.

6. —— The law does not exact of the holder that he should give actual notice of protest to the indorser, but only that he should use reasonable diligence to do so.

APPEAL from the St. Louis Circuit Court, HORNER, J. *Affirmed.*

DONOVAN & CONROY for the appellant: The notary did not exercise due diligence. — *Gilchrist* v. *Donnell*, 53 Mo. 591 ; *Wolff* v. *Burgess*, 59 Mo. 583. The service of notice was insufficient. — *Sanderson* v. *Reinstadler*, 31 Mo. 483 ; *Tang* v. *Dismer*, 71 Mo. 453.

ALBERT ARNSTEIN for the respondent: The notice sent to Washington, District of Columbia, was sufficient; that was Frost's " place of business " at that time, and the law presumes him to have been there. — *Chouteau* v. *Webster*, 6 Metc. 1 ; *Graham* v. *Sangston*, 1 Md. 59 ; Dan. on Neg. Inst., sect. 1027 ; Edwards on Bills and Notes, sect. 824 ; *Narr* v. *Johnston*, 9 Yerg. 1 ; *Tunstall* v. *Walker*, 2 Smed. &. M. 638, 657. A notice of protest may be sent either to the residence or to the place of business of the indorser ; and this, although the residence is out of the city, and place of business in it. — *Bank of Columbia* v. *Lawrence*, 1 Pet. 582 ; *Deken* v. *Hall*, 87 Pa. St. 379 ; *Bank of Geneva* v. *Howlett*, 4 Wend. 328 ; *Bank of Utica* v. *Bender*, 21 Wend. 643. If it is claimed that Selma was not the domicile of defendant, then the rule that a notice is sufficient if sent to the place where a party receives his mail, though it is not his domicile, applies. — *Glascock* v. *Bank*, 8 Mo. 443 ; *Reid* v. *Payne*, 16 Johns. 218 ; *Bank* v. *Lawrence*, 1 Pet. 578 ; Pars. on Notes and Bills, 495. The Selma notice was sufficient, even though there was no post-office at Selma. The notice was delivered by the post-office department at Crystal City, the post-office at which Frost testifies he received his mail when at Selma. — *Central Bank* v. *Adams*, 11 S. C. 452 ; *Slaughters* v. *Farland*, 31 Gratt. 134 ; *Bank* v. *Carneal*, 2 Pet. 550. The law requires merely that the notary exercise reasonable diligence in forwarding the notice. — *Renshaw* v. *Triplett*, 23 Mo. 213 ; *Sanderson* v. *Reinstadler*, 31 Mo. 483 ; Dan. on Neg. Inst., sect. 1003.

Thompson, J., delivered the opinion of the court.

This is an action upon a promissory note for $5,000 against the defendant Chambers, as maker, and the defendant Frost, as indorser. There was a default as to Chambers, and an answer by Frost, under which he set up that he had not received notice of the non-payment of the note. The case was tried by the court without a jury; the judgment went against him, and he has appealed. The only exceptions which were reserved in the course of the trial related to two or three rulings upon points of evidence, which we shall not consider, because the appellant does not ask us to consider them here. No declarations of law were asked or given. In the state of the record the only assignment of errors which we shall consider is, that the judgment was against the evidence; and, as the action was an action at law, under well settled rules, if the bill of exceptions exhibits evidence which ought to have taken the case to a jury, if it had been tried by a jury, we can not reverse the judgment on this ground.

In this state of the record we shall only consider whether there was such substantial evidence as ought to have taken the case to a jury upon the question whether the notary who protested the note for non-payment exercised such diligence in notifying the indorser as the law-merchant requires. It has been said, that where the facts are undisputed, this question is a question of law, and this rule is certainly more beneficial to commerce than a rule which would remand the question of diligence to the decision of juries. *Bank of Columbia* v. *Lawrence*, 1 Pet. 578, 583; *Sanderson* v. *Reinstadler*, 31 Mo. 483. But this can not be regarded as an inflexible rule. There are many cases where it will be a fair question for the jury or the trier of facts, whether the holder or the notary exercised reasonable business diligence in endeavoring to find out the proper address of the indorser when a non-resident; and such seems to be the present case. Indeed, it will

appear from an examination of the decisions that the courts are in the constant habit of putting this question to juries under proper instructions.

The holder of the note, when it was protested for non-payment, was this plaintiff, a banking corporation, whose residence was the city of St. Louis, Missouri. The general residence or domicile of Mr. Frost was also the city of St. Louis; but he, at the time, was a representative from this state in congress. His family were, however, residing temporarily, as it would seem, at a place generally known as Selma, in Jefferson County, Missouri, which is merely a landing upon the river, without a post-office, the nearest post-office to which is Crystal City, about two miles and a half distant from the landing. He had previously had a residence at No. 1335 Garrison Avenue, in St. Louis; but the notary had called there to give notice of the protest of a previous note, and had been informed by some one there that Mr. Frost had removed out of the city. He had a general place of business at No. 513 North Sixth Street, in the city of St. Louis. He was also an attorney and counsellor at law, and had an office, where he transacted his legal business, in the building on Fourth Street which adjoins the Chamber of Commerce building, in St. Louis. When in Washington attending to his public duties as a representative in congress, his mail came regularly to the congressional post-office, which was in the capitol building.

The notary, who protested the note, addressed, according to his certificate of protest, five notices to Mr. Frost by mail, as follows: —

1. " Under cover, by mail, post-paid, and addressed to R. Graham Frost, Washington, D. C."

2. " Under cover, by mail, post-paid, and addressed to R. Graham Frost, St. Louis, Mo."

3. " Under cover and addressed to R. Graham Frost, at the place of business of his agent, Joseph T. Donovan, at St. Louis, Mo."

4. "Under cover, by mail, post-paid, and addressed to R. Graham Frost, at Selma, Mo."

5. "Under cover, by mail, post-paid, and addressed R. Graham Frost, left at the residence of his father, with the person in charge."

The evidence, which, for the purposes of this appeal, we must take most strongly for the plaintiff, as on a demurrer to the evidence, shows that the first notice was in fact addressed to "Hon. R. Graham Frost, Washington, D. C.," and that an additional notice was delivered by a special messenger to Gen. D. M. Frost, the father of this defendant, at the residence of the former in St. Louis.

It is not claimed that the second, third, and fifth notices were good notices, because, where both the holder and the indorser reside at the same place, a notice by mail does not satisfy the law. *Bailey* v. *Bank of Missouri*, 7 Mo. 467; *Barrett* v. *Evans*, 28 Mo. 331; *Gilchrist* v. *Donnell*, 53 Mo. 591. Nor can it be successfully claimed that the notice sent by the messenger to Gen. Frost was a good notice; for the law is not satisfied by a notice by a messenger delivered to a third person, unless it is delivered at the residence or place of business of the indorser; and there is no substantial evidence that the residence of Gen. Frost was one of the residences of this defendant.

1. We are of opinion that the general notice sent by mail and addressed "Hon. R. Graham Frost, Washington, D. C.," might properly have been regarded by the trier of facts as a good notice. There is evidence tending to show that, before the notary sent this notice, he went to the post-office and there inquired for Mr. Frost's address, and was told it was Washington, D. C., whereupon he mailed the notice to him as stated.

This was on the 23d of December, 1880. The congress was then in regular session, but it had, on the day previous, taken the usual holiday recess, as was shown by a copy of

the *Congressional Record* put in evidence.   This recess was taken from the 22d of December until the 5th of January following.   That a notice of protest sent by mail to a members of congress while engaged in discharging his public duties as such at Washington, is a good notice, has been held both in Massachusetts and in Mississippi.   *Chouteau* v. *Webster*, 6 Metc. 1 ;   *Tunstall* v. *Walker*, 2 Smed. & M. 638. In the former of these cases, Daniel Webster, a senator from Massachusetts, was, when the notice of protest was sent to him by mail, at Washington, D. C., attending a special session of congress at Washington, and he had at Boston, just as Mr. Frost had at St. Louis, a place of business and an agent to attend to his business ; and yet the court, Chief Justice Shaw delivering the opinion, held that the notice thus mailed to him was a good notice.

The fact that congress had taken this temporary recess may not have been known to the notary, and, if known, it would not necessarily indicate to him that Mr. Frost would be absent from the capital during such recess.   If it should indicate this it would not impair the legal sufficiency of the notice ;   because the controlling rule is that where the indorser has different residences and different places of business, the notice must be sent to the place where, upon diligent inquiry, it seems most likely to reach him with certainty and promptness.   *Cabot Bank* v. *Russell*, 4 Gray, 169, 470, per Shaw, C. J.

Nor can the circumstance that the indorser was in the habit of receiving his mail, not at the general post-office in Washington, but at a special post-office in the capitol building, impair the legal sufficiency of this notice, unless this fact were known to the notary or would have been disclosed to him upon reasonable inquiry.   That he did not know this appears from the evidence, and that it was not disclosed to him upon the inquiry which he made at the post-office in St. Louis also sufficiently appears.   It seems that this post-office was the most proper place at which to make such an

inquiry, for it must be supposed from the nature of Mr. Frost's public duties at the time, that numerous letters were constantly received at the St. Louis post-office for transmission to him at his official residence at Washington. At all events, it can not be said that this testimony was not sufficient to take the case to the trier of the fact upon the question of diligence. It has been held several times, that where there are two or more post-offices in the town where the indorser resides, a notice sent by mail to the town generally will be a good notice, unless a reasonable inquiry would have disclosed to the holder or the notary the actual post-office at which the indorser commonly received his mail. *Burlingame* v. *Foster*, 128 Mass. 125 ; *Morton* v. *Westcott*, 8 Cush. 425 ; *Cabot Bank* v. *Russell*, 4 Gray, 167. The "towns" here spoken of are not cities or villages, but New England towns, which correspond to townships in Missouri and Illinois, each of which frequently contains several villages and several post-offices.

2. We also think that there was evidence from which the trier of the fact might have found that the notice addressed to Mr. Frost, at Selma, Missouri, was a good notice. It appears that there was a place, not a village, but a landing on the Mississippi River, in Jefferson County, Missouri, called Selma ; that there had formerly been a post-office there, but that it had been discontinued and another post-office established at a place called Crystal City, about two and a half miles distant ; that letters were still frequently addressed to Selma, Missouri, and that, in the regular course of the business of the postal department would be delivered at Crystal City, Missouri. This is shown by the testimony of the superintendent of the mailing department of the St. Louis post-office, who has been in the postal service since 1851. It further appears that the notary inquired at the place of business of Mr. Frost, at 513 North Sixth Street, St. Louis, and was there told that his family resided at Selma, Missouri. That the place is known as Selma sufficiently appears from the

testimony of Mr. Frost himself, who several times calls it Selma, and who admits having received at the Crystal City post-office letters addressed to him at Selma. On the day on which this notice was sent Mr. Frost, according to his own testimony, passed through St. Louis on his way from Washington to visit his family, and, on the following day, he joined them at Selma. It has been held, as applicable to such a state of facts as this, that it is not essential to the validity of such a notice that it should be addressed to the post-office, *eo nomine*, at which the indorser is in the habit of receiving his mail. If it be addressed so that in the ordinary course of mail it would go to and be retained at such post-office, it is sufficient. Thus, where such a notice was addressed to the indorser " at his domicile near Tompkins Bend, parish of Carroll, Louisiana," it was held a good notice, although there was no post-office by the name of Tompkins Bend in the Parish of Carroll; the evidence showing, that in the ordinary course of mail the letter would reach the indorser. *Ledoux* v. *Morgan*, 3 La. An. 344. So, where the notice was addressed to the indorser " at the parish of Rapides," and the evidence showed that there were several post-offices in that parish, but that the principal one was Alexandria, and that a letter so addressed would be received at this post-office and retained, and that the defendant had a box at such office and was in the habit of receiving his mail there, it was held a good notice, the court saying : " Any address of the notice which will insure its transmission to the proper office, is a compliance with the requirements of the law." *Citizens' Bank* v. *Walker*, 2 La. An. 791.

In these cases, the law-merchant does not exact actual notice, but it exacts reasonable diligence of the holder or his agent, in an endeavor to communicate actual notice ; and what conduct will satisfy this demand of the law has been thus expressed by an eminent judge : " It is the duty of the holder, or of the notary, or other officer or agent employed

by him, to make reasonable inquiries at the proper sources, to ascertain the residence or place of business of the indorser, at what post-office, one or more, in the same or another town, he is accustomed to receive his letters; and, in the absence of such information, to find out the post-office nearest, or, in some other respect, most convenient to his residence; and then address an official notice by mail, and to such post-office as that it would be most likely to reach him certainly and promptly." *Cabot Bank* v. *Russell*, 4 Gray, 167, 170, per Shaw, C. J.

It seems to us that there was evidence from which the trier of the fact might properly have inferred that the notary had done this in this case. And we might add, that after sending five notices addressed as above stated, and also delivering one by messenger to General Frost, and considering that this defendant was at the time a well known public man, it would have been extraordinary if some of them had not reached him.

We think the judgment ought to be affirmed. It is so ordered. All the judges concur.